[No. C018845. Third Dist. Feb. 28, 1996.]

KATHLEEN KENNEDY et al., Plaintiffs and Appellants, v. BAXTER HEALTHCARE CORPORATION et al., Defendants and Respondents.

## COUNSEL

Friedman & Collard, Morton L. Friedman, C. Brooks Cutter and Eric J. Ratinoff for Plaintiffs and Appellants.

Porter, Scott, Weiberg & Delehant, Craig A. Caldwell, Seyfarth, Shaw, Fairweather & Geraldson, Robert M. Mitchell, Jay W. Connolly, Kurt A. Kappes, Sedgwick, Detert, Moran & Arnold, Stephanie A. Sheridan, Preuss, Walker & Shanagher, Charles F. Pruess, Thomas W. Pulliam, Jr., Alan J. Lazarus, Kenneth P. Conour, Wise, Wiezorek, Timmons & Wise, Albert F. Padley III, Duane H. Timmons, Bolling, Walter & Gawthrop, T. D. Bolling, Jr., Marjorie E. Manning, Klauschie & Shannon, Thomas J. Kristof, Jack A. Klauschie, Jr., Thomas D. Marple and Cort B. Mahl for Defendants and Respondents.

## OPINION

**SPARKS, Acting P. J.**—Plaintiffs Kathleen Kennedy and Sharon Tryon are health care workers who brought suit against a variety of manufacturers, distributors, and sellers of latex gloves for injuries sustained due to an alleged allergic reaction to these gloves.[1] In addition to individual causes of action, plaintiffs' second amended complaint also alleged a class action on behalf of "those persons in the health field in the State of California with allergies and medical problems due to repeated exposure to said latex gloves."

The trial court eventually sustained defendants' demurrers to the class action allegations without leave to amend, and plaintiffs appeal. We shall affirm.

[1]As named in plaintiffs' complaint, defendants included Baxter International, Inc.; Baxter Healthcare, Inc.; Kendall Healthcare Products Company, a division of the Kendall Company; Ansell Medical Incorporated; Voluntary Hospitals of America, Inc.; Aladan Gloves; Smith and Nephew; Surgikos; Sakscorp; American Health Products; and Johnson and Johnson Medical, Incorporated.

## Factual and Procedural Background

In their original complaint, plaintiffs alleged six causes of action based on defendants' alleged failure to warn of potential dangers associated with exposure to latex. These causes of action included products liability claims predicated on negligence, strict liability and failure to warn; negligent misrepresentation; breach of warranty; and equitable relief in the form of a medical monitoring fund. These claims were asserted on behalf of plaintiffs individually and on behalf of a class consisting of "those persons within the State of California with allergies and medical problems due to latex and latex-related products and specifically including, but not limited to, persons in the medical and dental field in the State of California who are obliged to use, did use, and are using protective gloves, hoods, masks and similar objects."

Defendants demurred to the class action allegations, asserting in part that common questions were overshadowed by the unique factual and legal issues presented by each individual claimant. They urged there were such differences on questions of liability, causation, damages and defenses that treatment of this litigation as a class action was inappropriate. The trial court agreed, and commented on the overly broad nature of a class made up of any user of any latex product who suffered any type of injury. The court sustained defendants' demurrer with leave to amend, ruling: "The purported class is not sufficiently defined nor ascertainable. Further, on the face of the complaint, there appears to be no benefit to the court from the litigation if as [sic] a class action. Plaintiffs may narrow the description of the class as much as plaintiffs are willing to, and the court will rule whether the change is sufficient."

In their first amended complaint, plaintiffs included the same causes of action, with one exception: they dropped their claim for negligent misrepresentation. Instead of a class composed of any people who had used any latex products, as described in their initial complaint, plaintiffs now described a class "consisting of those persons within the State of California with allergies and medical problems due to repeated exposure to protective latex gloves specifically including persons in the health field in the State of California who are obliged to use, did use, and are using protective latex gloves."

Defendants renewed their demurrer, again asserting in part that there was no ascertainable class and that individual issues predominated. At the hearing on this demurrer, the court noted the problems presented by the fact that

plaintiffs had not alleged that they used gloves manufactured by any particular defendant. Defendants pointed out other problems, ranging from the fact that plaintiffs were not the actual purchasers of the gloves and thus did not enjoy the privity required to assert a claim for breach of implied warranty of merchantability, to the fact that each company's knowledge of the risks associated with latex may have varied, to the fact that exposure to other forms of latex may have contributed to any injuries. The court concluded that all of these arguments were troublesome, and sustained the demurrer, ruling: "There is no community of interest and no ascertainable class. Sub-classes would be unmanageable and almost infinite. The interests of the justice system would not be served by allowing a class action." The court continued: "From the complaint it cannot be ascertained which named plaintiff was damaged by which product of which defendant. There is no adequate allegation of injury, nor of causation."

Plaintiffs responded with their second amended complaint, the complaint at issue in this appeal. They reiterated five causes of action, namely, negligence, strict liability, failure to warn, breach of implied warranty of merchantability, and equitable relief in the form of a medical monitoring fund. In describing the class involved in this litigation, plaintiffs stated: "The latex gloves designed, manufactured, produced, promoted, sold, distributed, advertised, supplied, etc[.], by defendants, and each of them, all contained a common protein component that caused the injuries to plaintiffs herein and all other members of the class consisting of those persons in the health field in the State of California with allergies and medical problems due to repeated exposure to said latex gloves." The named plaintiffs further alleged they were bringing their action on behalf of themselves and "other members of a class consisting of those persons with in the State of California with allergies and medical problems due to repeated exposure to protective latex gloves[,] specifically persons in the health field in the State of California who are obliged to use, did use, and are using protective latex gloves."

The complaint outlined the connection of each defendant to latex gloves and asserted named class representative Sharon Tryon used gloves manufactured, designed, sold, and distributed by all of the defendants, while representative Kathleen Kennedy used gloves associated with defendants Baxter Healthcare Corporation, Kendall Healthcare Products Company, and Ansell Medical Incorporated.

Defendants again demurred to the class action allegations of the complaint. They argued that permitting this lawsuit to be tried as a class action would be inappropriate for a number of reasons. Specifically, defendants

asserted individual questions would predominate in that defendants manufactured a variety of types of latex gloves, with varying amounts and types of protein in the latex itself. Individuals may have been exposed to this same allegedly harmful protein in their use of other latex products, manufactured by other companies. Individual sensitivities to latex proteins vary and may be exacerbated by the use of certain foods. Class members may have used the product over an extended period of time, giving rise to a possible statute of limitations defense in some cases. As one defendant phrased it, the case involved employees using different gloves manufactured by different defendants over different periods of time with different frequencies of use.

Defendants also questioned whether the named representatives were in fact typical of other class members, given that one of the named plaintiffs had used gloves associated with all of the defendants while another used gloves connected with only three of the defendants.

The trial court ruled: "The demurrers of all defendants to the class action status allegations are sustained without leave to amend. The amendment[s] made subsequent to the court's previous tentative ruling do not materially change the issues and do not affect the court's decision. The court has considered plaintiff[s'] contentions submitted in writing and at oral argument on several occasions, and is convinced that the demurrers should be sustained. The court and the demurring parties have stated the reasons for this ruling, and they need not be repeated here. To point out specific factors at this stage would only emphasize them to the exclusion of other valid points, which need not be repeated. Waiting for an evidentiary hearing on class certification would be incorrect, and wasteful of the time and money of the court and the parties."[2]

Plaintiffs appeal from the ensuing order sustaining defendants' demurrers without leave to amend.

### APPEALABILITY

We previously denied defendant Johnson and Johnson Medical, Incorporated's motion to dismiss plaintiffs' appeal as taken from a nonappealable order. Defendants renew that claim in their appellate briefs, asserting that because this lawsuit is still viable as to the individual plaintiffs, the present appeal is premature. We disagree.

---

[2]The court also sustained the demurrers of defendants Johnson and Johnson Medical, Incorporated and Smith and Nephew to the complaint of plaintiff Kennedy, who admitted she had not used gloves associated with either of these defendants. That portion of the court's ruling is not involved in this appeal.

■ "The one-final-judgment rule generally precludes piecemeal litigation through appeals from orders which dispose of less than an entire action. [Citations.] An order denying class certification does not finally dispose of an action since it leaves it intact as to the *individual* plaintiff. However, the order is appealable if it effectively terminates the entire action as to the class, in legal effect being 'tantamount to a dismissal of the action as to all members of the class other than plaintiff. [Citations.]' [Citations.] The appeal is allowed, as a matter of state law policy, because the order has 'the "death knell" effect of making further proceedings in the action impractical. . . .' " (*Stephen* v. *Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 811 [1 Cal.Rptr.2d 130], italics in original; see also *Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

Thus, although an order sustaining a demurrer is not generally appealable, the court's order in the instant case "determines the legal insufficiency of the complaint as a class suit . . . ." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732].) "In 'its legal effect' [citation] the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff[s]. [Citations.] It has virtually demolished the action as a class action. If the propriety of such disposition could not now be reviewed, it can never be reviewed." (*Ibid.*) Since the court's order prevents any further proceedings as a class action, the order is in legal effect a final judgment from which an appeal lies. (*Ibid.*)[3]

## STANDARD OF REVIEW

■ "Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action." (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial

---

[3]This situation is thus distinguishable from that in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], cited by defendants, in which the court sustained demurrers to class action allegations contained in one cause of action but overruled the demurrers to a second cause. (See *id.* at p. 807, fn. 4; see also *Shelley* v. *City of Los Angeles* (1995) 36 Cal.App.4th 692, 695-697 [42 Cal.Rptr.2d 529, 53 A.L.R.3d 513].)

court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) An appellate court must affirm if the trial court's decision to sustain the demurrer was correct on any theory. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)[4]

## DISCUSSION

Code of Civil Procedure section 382 authorizes class action lawsuits "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." ■■■ By permitting resolution of the claims of many individuals at one time, class action suits eliminate the possibility of repetitious litigation and give claimants a method of redress for claims that might otherwise be too small to warrant individual litigation. (*Richmond* v. *Dart Industries, Inc., supra*, 29 Cal.3d at p. 469.)

In order to maintain a class action, certain prerequisites must be met, specifically, "the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond* v. *Dart Industries, Inc., supra*, 29 Cal.3d at p. 470.)

■■■ "In addition, while the trial court has an obligation to consider the use of subclasses and other innovative procedural tools proposed by a party to certify a manageable class [citations] the trial court must also consider the fundamental question whether maintenance of the lawsuit will benefit the

---

[4]Plaintiffs assert that rather than sustaining the demurrer to class action allegations, the trial court should have waited to hold an evidentiary hearing on class certification. "To the contrary, courts have routinely decided the issue of class certification on demurrer, sustaining demurrers without leave to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.] Where a complaint, on its face, fails to allege facts sufficient to establish a community of interest as to the elements of the class claims, it would be a waste of time and judicial resources to require a full evidentiary hearing when the matter can properly be disposed of by demurrer." (*Clausing* v. *San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234 [271 Cal.Rptr. 72]; accord, *Brown* v. *Regents of University of California* (1984) 151 Cal.App.3d 982, 989 [198 Cal.Rptr. 916].)

parties and the courts. [Citations.] As our Supreme Court noted in *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 . . . , while courts should seek to protect class actions as a general rule, they must also keep in mind 'the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. . . . [T]rial courts [must] carefully weigh respective benefits and burdens . . . [and] allow maintenance of the class action only where substantial benefits accrue to both litigants and the courts.' [Citation.]

"Consequently, the party seeking [to maintain a class action] must demonstrate 'that the questions which they will be required to litigate separately are not numerous or substantial. . . .' [Citation.] Certification is properly denied where 'the individual questions to be decided may prove too complex, numerous and substantial to allow the class action . . . or the benefits to be gained may not be significant enough to justify imposition of a judgment binding on absent parties.' [Citations.] Although class actions generally are favored, they 'will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law.' " (*Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 653-654 [243 Cal.Rptr. 815].)

Thus, a class action cannot be maintained if each individual's right to recovery depends on facts peculiar to that individual. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) ▮ "[T]he community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining [the member's] individual right to recover following the 'class judgment' determining issues common to the purported class." (*Ibid.*)[5]

The parties dispute whether a class action lawsuit must present common questions of law and fact, or common questions of law or fact, and the parties quote cases favoring their respective positions. (Compare, e.g., *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1123 with *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) However, as the standards just

[5]In outlining the law governing class actions, plaintiffs cite numerous cases interpreting rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (rule 23) and federal class action suits. However, "[i]t is only in the *absence* of relevant state precedent that courts turn to federal law and rule 23 for guidance." (*Stephen* v. *Enterprise Rent-A-Car, supra,* 235 Cal.App.3d at p. 814, italics in original; see also *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1118 [245 Cal.Rptr. 658, 751 P.2d 923].) California law has clearly established the relevant requirements for the maintenance of class action lawsuits, and we therefore have no need to resort to federal authorities to determine the appropriate standards to apply.

enunciated make clear, the difference is chimerical. Regardless of the language used, the central question is the same: do common questions predominate over issues requiring separate adjudication? (See, e.g., *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1123; *Richmond* v. *Dart Industries, Inc.*, *supra*, 29 Cal.3d at pp. 477-478; *City of Jan Jose* v. *Superior Court*, *supra*, 12 Cal.3d at p. 460; *Osborne* v. *Subaru of America, Inc.*, *supra*, 198 Cal.App.3d at pp. 653-654.) "[I]f a class action 'will splinter into individual trials,' common questions do not predominate and litigation of the action in the class format is inappropriate." (*Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215].)

As the California Supreme Court has observed, class actions for personal injuries in mass tort litigation present a multitude of problems. "The major elements in tort actions for personal injury—liability, causation, and damages—may vary widely from claim to claim, creating a wide disparity in claimants' damages and issues of defendant liability, proximate cause, liability of skilled intermediaries, comparative fault, informed consent, assumption of the risk and periods of limitation." (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1123.)[6]

This case exemplifies these problems. Individual questions clearly predominate in determining liability, causation, damages and defenses. For example, plaintiffs allege defendants manufactured, distributed, and sold latex gloves containing a protein that caused injury to plaintiffs. The complaint indicates these gloves were manufactured in a variety of locations throughout the United States, and in Sri Lanka, Malaysia, and Indonesia. Before liability can be imposed for failure to warn, plaintiffs must demonstrate that each defendant knew or should have known of the danger posed by this particular protein as used in each brand of latex glove. (See *Schwoerer* v. *Union Oil Co.* (1993) 14 Cal.App.4th 103, 111-112 [17 Cal.Rptr.2d 227]; *Persons* v. *Salomon North America, Inc.* (1990) 217 Cal.App.3d 168, 174-176 [265 Cal.Rptr. 773].) The question of liability for each defendant thus turns on separate factual issues.

Similarly, plaintiffs' cause of action for breach of the implied warranty of merchantability also presents individual questions on the issue of liability. In order to recover on such a claim, plaintiffs must stand in "vertical privity"

---

[6]Plaintiff asserts federal case law clearly supports the use of class action litigation in mass tort situations. Whether class actions are generally favored or unfavored in this type of lawsuit is immaterial. What is critical is whether common questions predominate. In some mass torts, that question may be answered in the affirmative, while in others individual questions may outnumber common questions. As we explain, this case falls into the latter category.

with the defendants, i.e., they must " 'occupy adjoining links in the [distribution] chain.' " (*Osborne* v. *Subaru of America, Inc.*, *supra*, 198 Cal.App.3d at p. 656, fn. 6.) Plaintiffs have not alleged they purchased the latex gloves directly from defendants, and we assume many potential class members, such as hospital workers, would not be able to make such a showing. In any event, privity would have to be determined on a case-by-case basis for each plaintiff.

The area of damages also presents more individual than common questions, particularly since the proposed class may include those who suffered minor skin irritation as well as those who suffered life-threatening allergic reactions. Individual issues will also arise on the subject of mitigation of damages.

Defenses will require individual litigation of claims. Health care workers may have been using latex gloves for a period of time exceeding the statute of limitations, thus requiring an examination of the viability of each plaintiff's claim. Questions will arise concerning assumption of the risk and comparative negligence. For example, a registered nurse might have suffered skin irritation on her hands after wearing latex gloves, realized the reaction was caused by the gloves, but decided to wear the gloves anyway to protect against other hazards.

Perhaps the most obvious impediment to class treatment of plaintiffs' complaint is the enormous number of individual questions that will inevitably arise on the question of causation. We point out only a few of these issues. Latex is a common material found in countless products, not simply gloves used in a health care setting. Health care workers, like others in society, may have come into contact with latex dishwashing or gardening gloves, balloons, paint, condoms, clothing, or any of numerous other latex items, thus raising the possibility that allergies were caused by, or exacerbated by, products other than latex gloves. Moreover, according to defendants, allergic reactions may be caused by the interaction of latex and certain foods, bringing into question the diets of each plaintiff. Furthermore, because there is no allegation that the gloves were manufactured according to a common formula, questions arise as to whether the protein alleged to cause the allergic reactions is present in the same amount and causes the same ill effect in each brand of gloves.

■ Plaintiffs assert potential problems in proving a particular defendant's gloves caused injury to a particular class member can be resolved under the theories set forth in *Sindell* v. *Abbott Laboratories* (1980) 26

Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924] and *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. Plaintiffs err.

In *Sindell* v. *Abbott Laboratories*, *supra*, defendants collaborated in the production and marketing of diethylstilbestrol (DES), a drug "produced from a common and mutually agreed upon formula as a fungible drug interchangeable with other brands of the same product." (26 Cal.3d at p. 595.) The Supreme Court created a new theory of liability, known as market share liability, in which a plaintiff injured by such a fungible product could sue various makers of the product if a substantial share of those makers were joined as defendants. (*Id.* at pp. 611-612.) Here, however, plaintiffs do not allege that these gloves were fungible and made according to the same formula, nor do they assert that all brands of gloves contained the same levels of the allegedly harmful protein. Furthermore, there is no indication that the named defendants represent a substantial share of the makers, distributors and sellers of latex gloves. Without such allegations, plaintiffs cannot state a cause of action under the market share theory of liability. (See *Setliff* v. *E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1536-1537 [38 Cal.Rptr.2d 763].)

Nor can plaintiffs allege liability under the alternative liability theory developed in *Summers* v. *Tice*, *supra*, 33 Cal.2d 80. In *Summers*, plaintiff was injured when two hunters negligently shot toward him. (*Id.* at pp. 82-83) Because it was impossible to determine which defendant had fired the shot causing the injury, both defendants were held jointly and severally liable. The court concluded that both were negligent, and it was unfair to require the plaintiff to prove which defendant was responsible. Concluding the defendants were in a better position to offer evidence on the question of causation, the court shifted the burden of proof to the defendants, "each to absolve himself if he can." (*Id.* at p. 86.)

"California courts have applied the alternative liability theory only when all potential tortfeasors have been joined as defendants." (*Setliff* v. *E. I. Du Pont de Nemours & Co.*, *supra*, 32 Cal.App.4th at pp. 1534-1535.) Here, plaintiffs have not alleged that they have identified all makers, distributors and sellers of latex gloves. Moreover, unlike the situation in *Summers*, it is a reasonably simple matter for plaintiffs to identify the exact cause of their injuries. That is, they can determine which defendant manufactured the gloves they used by examining purchasing and/or shipping records. The

rationale for shifting the burden of proof present in *Summers*, *supra*, simply is not present here.

■ Despite the numerous individual questions raised on issues of liability, causation, damages and defenses, plaintiffs assert common questions nonetheless predominate, and the many variables can be handled through the use of subclasses.[7] However, ". . . there are limits outside of which the subclassification system ceases to perform a sufficiently useful function to justify the maintenance of the class action." (*City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d at p. 463, fn. 10; accord, *Osborne* v. *Subaru of America, Inc.*, *supra*, 198 Cal.App.3d at pp. 658-659.) Given the number of variables involved in this case, a vast number of subclasses would be required, thus defeating the purposes served by class action litigation. (See *City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d at p. 462.)

In short, individual questions clearly predominate over common issues in this case. The court is presented with "a veritable quagmire of tough factual questions which can only be resolved by individual proof." (*Brown* v. *Regents of University of California*, *supra*, 151 Cal.App.3d at page 989.) We agree with the conclusion of another court as stated in *Clausing* v. *San Francisco Unified School Dist.*, *supra*, 221 Cal.App.3d at p. 1234: "The instant case is precisely the kind of mass-tort lawsuit which courts have found not amenable to class certification. [Citations.] In these kinds of cases, the wide disparity in individual claimants' damages and the diverse issues of liability and causation as to each individual claimant preclude maintenance of the suit as a class action. Here, [plaintiffs] do not allege that all members of the purported class were injured by the same person, in the course of the same incident, or even at the same [location]. The different factual circumstances which would have to be tried are therefore legion." To conclude otherwise would permit virtually *any* products liability case to be litigated as a class action, a result which is clearly contrary to law.[8]

Plaintiffs failed to establish the existence of a community of interest as required in class action litigation. The trial court therefore properly sustained defendants' demurrers without leave to amend as to all unnamed class plaintiffs.

---

[7]Plaintiffs' complaint proposes the use of two subclasses, each consisting of users of latex gloves and their spouses, with one subclass consisting of those who have suffered adverse medical reactions through repeated exposure to latex gloves, and the other consisting of those who are likely to suffer such problems in the future. In opposing defendants' demurrer, plaintiffs suggested additional subclasses could be added if necessary.

[8]Given our conclusion, we do not address other issues discussed by the parties concerning typicality of representation and the ascertainability of the class.

## DISPOSITION

The judgment (order) is affirmed.

Scotland, J., and Nicholson, J., concurred.