[No. B192109. Second Dist., Div. Six. June 27, 2007.]

ATZE AKKERMAN, Plaintiff and Appellant, v.
MECTA CORPORATION, INC., Defendant and Respondent.

1096

 

Counsel

Moxon & Kobrin and Kendrick Moxon for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Gary M. Lape and Joseph C. Owens for Defendant and Respondent.

Opinion

**GILBERT, P. J.**—The homonym "suit" can mean a legal action or apparel. Though quite dissimilar, the two share one important attribute in class actions. One size does not fit all.

 Plaintiff Atze Akkerman appeals an order denying his motion for class certification. He filed an action under the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200, 17500)[1] for deceptive advertising against Mecta Corporation, Inc. (Mecta), the manufacturer of an electroconvulsive therapy (ECT) machine. The trial court found that Akkerman did not establish the elements for class certification; did not adequately define an ascertainable class; did not show that he could represent it; and did not demonstrate a sufficient community of interest among the class members. The factual issues pertaining to each class member's tort restitution claim predominate over common questions of law and fact for the class. We affirm.

### FACTS

Akkerman suffered from severe depression. In 1999, Dr. Joseph Johnson, a psychiatrist at the Santa Barbara Cottage Hospital (SBCH), recommended ECT treatments to alleviate this disorder. Dr. Johnson performed ECT on Akkerman at SBCH, using a Mecta machine. He attached electrodes to Akkerman's head and induced "jolts of electricity to pass between the electrodes." Akkerman claimed that the treatments caused him to experience memory loss and impaired cognitive functioning.

#### The Santa Barbara County Superior Court Action

Akkerman and his wife sued Dr. Johnson and SBCH, alleging tort causes of action for fraud, medical malpractice and loss of consortium. They claimed SBCH gave them patient consent forms that were "out-dated and incomplete," and did not adequately advise them that ECT treatments may cause "irreversible, permanent memory loss." They also sought a UCL injunction

---

[1] All statutory references are to the Business and Professions Code unless otherwise stated.

on behalf of the public (§§ 17200, 17500) to prevent SBCH from using misleading consent forms for patients seeking ECT.

At trial on the tort causes of action, the Akkermans proved that Dr. Johnson and SBCH used ECT patient consent forms and informed consent review procedures that did not comply with standards required by the State Department of Mental Health. The jury found (1) Dr. Johnson was "negligent in obtaining the informed consent of Atze Akkerman," (2) SBCH "was negligent in performing the informed consent review," but (3) SBCH and Dr. Johnson did not cause injury to the Akkermans.

Later in 2005 in a court trial on Akkerman's two remaining causes of action for a UCL injunction against SBCH, the court ordered SBCH to cease performing ECT without first proving it was using adequate patient consent forms. It also found that the Akkermans did not prove that they "suffered any out of pocket loss as a result of defendant's wrongdoing," and were not entitled to restitution damages.

In response to SBCH's appeal, we reversed the order granting the injunction. We noted that Proposition 64 (§ 17204) imposed a new "injury in fact" standing requirement for private plaintiffs seeking UCL injunctions and the Akkermans had not shown they had suffered an out-of-pocket loss. We remanded the matter to determine whether the Akkermans could meet the new standing requirement. We noted that the California Supreme Court held that Proposition 64 does not preclude plaintiffs who lacked standing from amending their complaints and substituting new plaintiffs who have standing. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 [46 Cal.Rptr.3d 66, 138 P.3d 214].)

### The Federal Court Action

The Akkermans sued Mecta in federal court for the injuries suffered as a result of the ECT treatments he received at SBCH. They alleged causes of action for strict liability, negligence, breach of warranty and loss of consortium claiming that Mecta knew ECT was dangerous, but misled the public by minimizing or not disclosing the risks of the procedure.

In their fifth and sixth causes of action they sought a class action UCL injunction against Mecta for false and misleading advertising about ECT. (§§ 17200, 17500.) In 2004, the federal district court remanded these two UCL class action injunction causes of action to the Ventura County Superior Court, but retained jurisdiction of the remaining causes of action.

In 2005, after a trial on the four individual damage causes of action, the jury ruled against the Akkermans and the federal court entered judgment for Mecta. In the special verdict form, the jury found that Mecta was not negligent, there was no strict liability and Mecta was not liable on the Akkermans' claim of negligent failure to warn. The Akkermans appealed the federal district court judgment to the Ninth Circuit Court of Appeals.

### The Ventura County Superior Court UCL Class Action

In his superior court class action complaint for UCL injunctive relief (§§ 17200, 17500) against Mecta, Akkerman alleged that he had suffered permanent memory loss from his ECT treatments. He said Dr. Johnson recommended ECT and falsely represented that it "was not harmful" and would only result in "some limited memory loss." Akkerman claimed Dr. Johnson's misrepresentations were brought about, in part, by false information provided to him by Mecta.

He alleged that Mecta violated the UCL by distributing a book for patients and health care providers which stated, "Excellent, objective, studies show no permanent memory loss after ECT, nor any impairment of one's ability to remember. Some minor events which occur just before ECT may be lost in memory, but most ECT patients recall everything quite clearly." Akkerman alleged that this was "a false and deceptive statement."

He filed a motion for class certification and defined the class as "all members of the public who have received shock treatment in California from MECTA devices after September of 1997." He sought monetary restitution for the class for the costs of ECT treatments paid by class members, insurers and public agencies. The court denied the motion "based on the inability to determine the class, and for failure to show other elements necessary for class certification."

### Motion for Precertification Notice to Class Members by Hospitals

Akkerman filed a motion for an order to require the Ventura County Superior Court to order hospitals that performed ECT to send a notice to their ECT patients to advise them about the filing of this class action. The trial court granted this motion. Mecta filed a petition for writ of mandate in this court to vacate the order. We issued an alternative writ of mandate.

But before we could decide the merits of the writ, the trial court reversed itself by denying the motion for this precertification notice. It noted that the hospitals were not parties to this action and Akkerman was using the motion

in lieu of the more traditional means of giving notice to the class, e.g., through "media notices." It found that the order to hospitals which Akkerman sought "intrudes into an area of medical care which has been granted significant protections by statute. (Welf. & Inst. Code, § 5328.)"

## DISCUSSION

### I. *Class Certification*

█ Akkerman contends the trial court erred by denying his class certification motion. We disagree. "In order to maintain a class action, certain prerequisites must be met, specifically, 'the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736] (*Kennedy*).)

" 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification . . . .' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].) "We review the trial court's ruling for abuse of discretion." (*Ibid.*)

### A. *An Ascertainable Class and an Adequate Class Representative*

█ Denial of class certification was proper because Akkerman did not adequately define the class, nor did he prove that his claims were typical of those within it. A plaintiff must prove that there is an identifiable group that was harmed by the defendant and that he or she is an adequate class representative. (*Kennedy, supra,* 43 Cal.App.4th at p. 808.)

In Akkerman's class certification motion, he defined the class as "all members of the public who have received shock treatment in California from MECTA devices after September of 1997." But the trial court reasonably could find that this definition is overbroad. Akkerman's causes of action for class relief involve allegations about patients who received ECT after relying on Mecta's misrepresentations about ECT risks. He claims Mecta disseminated a booklet, which falsely minimizes the risks of memory loss. But from this, the court could find that the class was more narrow than Akkerman's definition because it would involve only ECT patients *deceived* by Mecta. Moreover, Akkerman did not show how he could easily identify those who were deceived or distinguish between those patients and (1) patients who

relied in whole or in part on their doctor's advice, or (2) those who relied on state-mandated ECT patient informed consent forms which disclose the risks. (Welf. & Inst. Code, §§ 5326.2–5326.75; *Aden v. Younger* (1976) 57 Cal.App.3d 662, 676 [129 Cal.Rptr. 535].) Akkerman does not claim that the state informed consent forms are inadequate. But his class definition is so broad that it includes patients who were properly advised of the risks and those who relied on state-approved consent forms.

Akkerman did not adequately define those who were entitled to restitution or the entities from which the class could seek relief. He initially sought class restitution limited to those who suffered "brain damage and/or memory loss" as a result of ECT. But in his third amended UCL complaint, he sought restitution for all class members without limitation. That, however, would require a windfall award of restitution to all who received ECT even if the procedures were successful and beneficial.

Akkerman claims the class is entitled to restitution for the money Mecta received from class members. But the class members paid hospitals for ECT treatments, not Mecta. The hospitals are not parties to this action. Mecta manufactured the device; it did not perform ECT. Akkerman did not identify any class member who allegedly paid Mecta for ECT therapy.

Akkerman also alleged that he was an adequate class representative for patients who were deceived by Mecta. But he does not claim that he ever read or received the Mecta booklet or that Mecta deceived him. Instead, his pleading named the doctor who told him the ECT procedure was safe, and who had relied *"in part"* on information from Mecta. He attached to his certification motion records from his Santa Barbara action. But from this, the trial court could find that Akkerman's individual claim involved medical malpractice, not Mecta's false advertising. Because that cause of action differs substantially from the typical claims of class members who allegedly relied on Mecta's booklet, the court could find that Akkerman was not an adequate representative for that class. (*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 146 [121 Cal.Rptr. 637].)

Yet, even if Akkerman sought to represent a class of ECT patients misled by doctors who had read Mecta's booklet, the result would not change. That class would be too amorphous for certification. It would depend on the individual determinations of potentially thousands of medical "intermediaries" who are not defendants or parties to this action and whose advice would necessarily "vary" for each patient. (*Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16].)

 Moreover, the trial court could also find that Akkerman had no standing to file a UCL action. Private plaintiffs may not file UCL actions unless they have suffered injury in fact and lost money or property due to the defendant's conduct. (§ 17204; *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].) But in the Santa Barbara case, Akkerman did not prove damages because of his doctor's failure to advise him about ECT risks. Nor did he show that he suffered an out-of-pocket loss. In the federal case, the jury found he was not entitled to damages and Mecta did not mislead him. The trial court could rely on the federal trial court decision in deciding that Akkerman was not a proper class representative. (*Martin v. Martin* (1970) 2 Cal.3d 752, 761–762 [87 Cal.Rptr. 526, 470 P.2d 662] [federal trial court decisions against a party are binding on California courts until they are overturned by a federal appellate court under the federal doctrine of res judicata which California courts must apply].) But even had Akkerman met the requirements of defining a class and showing he could represent it, certification was properly denied for other reasons.

### B. *Individual Tort Issues Predominating over Common Questions of Fact and Law*

 Akkerman sought restitution damages for class members who paid for ECT procedures and relied on Mecta's alleged fraudulent misrepresentations. But class actions for tort liability "present a multitude of problems." (*Kennedy, supra,* 43 Cal.App.4th at p. 810.) Damages may " '. . . vary widely from claim to claim, creating a wide disparity in claimants' damages and issues of defendant liability, proximate cause, liability of skilled intermediaries, comparative fault . . . .' [Citation, fn. omitted.]" (*Ibid.*) Moreover, "a class action cannot be maintained if each individual's right to recovery depends on facts peculiar to that individual. [Citation.]" (*Id.* at p. 809.) " '[I]f a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate.' [Citation.]" (*Ibid.*)

Akkerman claims the "common issues predominate over any possible individual issues" and therefore class relief is appropriate. But the trial court could reasonably find that " ' "the individual questions to be decided" ' " on restitution were too variable and complex for class relief. (*Kennedy, supra,* 43 Cal.App.4th at p. 809.) Akkerman sought class relief to require Mecta to reimburse class members, insurance companies and public entities which paid for ECT treatments. But there is no uniform rate for the cost of ECT. It varies for each patient. Some of these costs would include physicians' services. The reasonableness and necessity of these services could vary for each case, and would require expert testimony.

The insurers and public entities which paid for ECT treatments are not parties to this action and are not members of the class. They paid directly to hospitals that are also not parties to this action. The trial court could reasonably infer that evidence from these nonparties would be essential to prove restitution. But Akkerman did not show that these nonparties agreed that restitution was owed. Bringing them into this action to prove individual claims would add such a burden for class members that it would defeat the purpose of a class action. (*Kennedy, supra,* 43 Cal.App.4th at pp. 809–810.)

Moreover, each class member would have to prove his individual claim for restitution by establishing reliance and causation. This would involve proof of (1) whether he relied on Mecta's brochure, (2) documents from other sources, or (3) whether he relied on a combination of information, (4) whether he was in fact deceived, or (5) whether he would have requested ECT, notwithstanding knowledge of all the risks.

■ In addition, the ECT treatments were recommended by each class member's doctor. Each doctor had the intervening and independent duty to disclose the risks of the procedure under the doctrine of informed consent. (See Welf. & Inst. Code, §§ 5326.2–5326.75.) But "[t]he concept of informed consent is a complex one . . . ." (*Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 990 [198 Cal.Rptr. 916].) It involves "such issues as what information was supplied to each patient, what the emotional condition of each patient was, what each patient's understanding of the information . . . was, and whether there was a necessity of dispensing with the requirement of informed consent due to emergency conditions." (*Ibid.*) "The extent of a physician's duty to disclose is directly controlled by the unique situation of each patient." (*Id.* at pp. 990–991.) "Since this duty will necessarily vary from case to case, . . . individual issues will predominate over common questions." (*Id.* at p. 991.)

### C. *The Efficiency of Class Action Relief As Applied to This Case*

■ A trial court may deny certification where the class action would be impractical or inefficient. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) Here the court reasonably could find that certification of a class action seeking restitution only for the costs of the ECT procedure would be inefficient. Class members who allegedly relied to their detriment on Mecta information and suffered brain damage could not receive complete relief in this action. They would only receive restitution for the comparatively small cost of the procedure. They would have to file separate individual actions to recover the more substantial portion of their damages for their injuries. This would result in splitting the damage causes of action and a multiplicity of proceedings. The more efficient procedure would be to litigate

all restitution and damages issues together in separate individual actions. (*Rose v. Medtronics, Inc., supra*, 107 Cal.App.3d at p. 157.)

██ Akkerman did not show why it was necessary to certify a class to obtain an injunction to stop the Mecta practices. (*Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 38 [10 Cal.Rptr.3d 82].) Plaintiffs who prove they have standing and a meritorious case may seek injunctive relief on behalf of the public by using "the streamlined provisions of the UCL" without the need to certify a class. (*Ibid.*)

### II. Denial of the Precertification Order Directed to Hospitals

██ Akkerman contends the trial court erred by denying his motion to require that a precertification notice be sent by hospitals to notify ECT patients about the class action. We disagree. A court order requiring a doctor to identify his or her psychiatric patients intrudes into an area protected by physician-patient confidentiality and the constitutional right of privacy. (Welf. & Inst. Code, § 5328; *Smith v. Superior Court* (1981) 118 Cal.App.3d 136, 140–141 [173 Cal.Rptr. 145].) Even a party who shows a compelling need for such disclosure may not obtain it without proving that there are no other "less intrusive means of accomplishing" the result. (*Scull v. Superior Court* (1988) 206 Cal.App.3d 784, 791 [254 Cal.Rptr. 24].) "When the right to disclosure clashes with a privilege, the court is required to 'indulge in a careful balancing' of the need for disclosure against the fundamental right of privacy. [Citation.]" (*Id.* at p. 790.)

Here the trial court properly weighed the factors in support of and against the issuance of this order. It noted that the hospitals were not parties to this case and had objected to the order on physician-patient confidentiality grounds. The California Hospital Association opposed the motion on the grounds that (1) such an order would be "unreasonably burdensome," (2) sending notices to the last known address of former ECT patients could compromise their privacy because many of them had moved, and (3) identifying ECT patients in the class would be difficult because many hospitals do not exclusively use Mecta machines and rely on ECT devices from a variety of manufacturers. These concerns were substantial. The court weighed them and found that Akkerman had other more traditional and less intrusive methods to notify the class. There is no abuse of discretion.

We are not persuaded by Akkerman's speculation that the trial court's order is based on its supposition about how this court would rule on the writ petition. The trial court had more than sufficient grounds to deny class certification however this court may have ruled on the writ petition.

We have reviewed Akkerman's remaining contentions and conclude that he has not shown reversible error.

The order is affirmed. Costs on appeal are awarded to respondent.

Yegan, J., and Coffee, J., concurred.