[No. A132323. First Dist., Div. Three. Jan. 25, 2013.]

PAUL MILLER, Plaintiff and Appellant, v.
BANK OF AMERICA, N.A., Defendant and Respondent.

**4**

COUNSEL

The Brandi Law Firm, Thomas J. Brandi, Brian J. Malloy; The Sturdevant Law Firm and James C. Sturdevant for Plaintiff and Appellant.

Morrison & Foerster, William L. Stern and Miriam A. Vogel for Defendant and Respondent.

OPINION

**JENKINS, Acting P. J.**—In this most recent iteration of this action, plaintiff Paul Miller appeals from the denial of his motion for class certification. We find the trial court correctly ruled that the proposed class fails to satisfy the requirements for class action certification. We further find no merit in Miller's claims that the Bank of America, N.A., is estopped from challenging his proposed class, that the court improperly made a premature ruling on the merits, and that the case should have been remanded to allow additional discovery. Accordingly, we affirm.

## BACKGROUND

### I. *From the Trial Court to the Supreme Court*

We start with a brief history of how this case arrived here in its present configuration. The original lawsuit, filed in 1998 on behalf of a proposed statewide class, challenged the Bank of America's (the Bank) allegedly unlawful practice of setting off funds from accounts into which Social Security and other public benefit payments had been directly deposited against overdrafts and bank fees. In 2001, the trial court certified a class defined as "All California residents who have, have had or will have, at any time after August 13, 1994, a checking or savings deposit account with Bank of America into which payments of Social Security benefits or other public benefits are or have been directly deposited by the government or its agent."

The case went to trial and resulted in a jury verdict in favor of the class. This court reversed. We held that all of the various statutory and common law offenses embodied in the judgment turned on an erroneous application of *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352 [113 Cal.Rptr. 449, 521 P.2d 441] (*Kruger*) to the Bank's practice of internally setting off overdrafts and bank fees against funds within checking accounts that received directly deposited government benefits (e.g., Social Security payments and other public benefits that are statutorily exempt from execution and attachment). Generally speaking, our analysis turned on the difference between such

intra-account setoffs and the practice of debiting exempt funds to collect balances owed on a separate credit card account. While *Kruger* made clear that the latter was prohibited, we held that the practice of deducting overdrafts and bank fees within single deposit accounts containing exempt funds was functionally and legally different from the two-account scenario addressed in *Kruger. Kruger*, therefore, did not govern Miller's claims against the Bank. (*Miller et al. v. Bank of America, NT & SA* (Nov. 20, 2006, A110137) [nonpub. opn.].)

The Supreme Court granted review and affirmed. In *Miller v. Bank of America, NT & SA* (2009) 46 Cal.4th 630 [94 Cal.Rptr.3d 31, 207 P.3d 531] (*Miller I*), it held that *Kruger* does not prohibit the practice of recouping overdrafts and bank fees within a single account. It explained: "Here, unlike in *Kruger*, the Bank is not setting off independent, past debt. Instead, the transaction occurs within a single account and is triggered by a customer's overdraft, causing the Bank to recoup those funds from a subsequent deposit, and charge an NSF [(insufficient funds)] fee. In *Kruger*, we concluded that the setoff of exempt funds to satisfy debts *external* to the bank customer's checking or savings account was unlawful. [Citation.] Plaintiffs urge us to view the fact that the Bank is balancing and charging fees within a single account as indistinguishable from a bank's setoff of debt external to a customer's account, and to extend *Kruger* to the present case. We do not agree with plaintiffs that there is no meaningful difference between satisfying a debt external to an account and recouping an overdraft of an account from funds later deposited into that same account." (*Id.* at p. 639.)

Miller asked the Supreme Court to modify its opinion and restore his individual damages award, contending his claims encompassed balancing activity between different accounts—specifically as to his own individual circumstances and those of several other class members—as well as internal balancing within a single account. This request was denied.

II. *And Back to the Trial Court*

Following remand to the trial court, the parties staked out very different views of what should happen next. Miller argued he was entitled to amend his complaint to add a new claim on behalf of a class of individuals "who have more than one deposit account with Bank of America and from which the bank seizes exempt funds from one account to pay a debt and/or fee in another account." The Bank, on the other hand, said this was merely an after-the-horse-is-stolen attempt to add theories Miller had already raised and lost or had made the tactical decision not to bring. Enough being enough, said the Bank, and nothing being left to retry after *Miller I*, it asked for entry of judgment in its favor. Presented with cross-motions to amend the complaint

and for entry of judgment, the trial court allowed Miller to amend his complaint to pursue his two-account theory.

Miller's third amended complaint alleged, inter alia, that the Bank's "two account seizure policy and practices" violated *Kruger*, *Miller I*, and provisions of the Financial and Civil Codes. He proposed a new class comprised of "all California residents who maintain a deposit account at [the Bank] within four years preceding the filing of this lawsuit and who receive exempt funds electronically in a deposit account from which [the Bank] seizes exempt sums to collect sums allegedly owed from a separate [Bank] account that is also maintained by the individual." He alleged on information and belief that the class exceeded a million members and that its exact size and the identity of its members could readily be obtained from the Bank's business records.

After a three-month stipulated extension of time for Miller to conduct additional discovery on the membership of his proposed "two-account" class, he moved to certify a class of "hundreds of thousands" of Bank customers affected by its alleged "cross-account collection activities." In opposition, the Bank argued the proposed class was fatally overbroad in that it included (and arguably consisted primarily of) accounts as to which the alleged setoff transactions were entirely legal. It also argued Miller had failed to show the proposed class members could be readily identified without unreasonable expense or time and offered evidence that there was no feasible way to distinguish between two-account setoff transactions that were lawful and those that were not. Finally, the Bank asserted that Miller had failed to prove the purported class was large enough to warrant a class action or that common questions of law and fact predominated over individualized issues.

The trial court issued a tentative ruling denying class certification three days before the hearing. Miller asked for a last-minute continuance to conduct discovery addressing deficiencies in his evidence noted in the tentative ruling. The court denied the request because "Miller has had all the opportunity he desired for additional discovery related to the certification motion, having entered into a stipulation for the time period he thought appropriate; and I must note that it appears he did not conduct discovery during that period in any event. Indeed, Miller's counsel told me at the hearing that he thought he had conducted enough discovery by the time of the 2004 trial. The years of litigation from 1998 to date have provided Miller enough time to produce evidence on certification." Following the hearing and a new round of briefing on a new judicial estoppel theory Miller raised at the hearing, the court denied class certification. This appeal timely followed.

## DISCUSSION

Miller contends the court erred by finding he had not established the requirements for class certification. In subsidiary arguments, he maintains (1) the Bank was estopped from arguing that not all two-account seizures of exempt funds are unlawful because it had previously asserted the opposite in both this court and the Supreme Court and (2) that the trial court prematurely decided the merits of his claims in ruling on class certification. We disagree.

### I. *Class Certification Requirements*

█ The governing legal principles are, by and large, well established. "In order to maintain a class action, certain prerequisites must be met, specifically, 'the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736].) Class certification is properly denied for lack of ascertainability when the proposed definition is overbroad and the plaintiff offers no means by which only those class members who have claims can be identified from those who should not be included in the class. (*Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1533, fn. 8 [87 Cal.Rptr.3d 518]; *Akkerman v. Mecta Corp., Inc.* (2007) 152 Cal.App.4th 1094, 1100–1101 [62 Cal.Rptr.3d 39].)

█ The party seeking class certification has the burden of establishing that the prerequisites are present. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*); *Hamwi v. Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215] (*Hamwi*).) "[S]atisfaction of that burden requires that the plaintiff establish more than 'a reasonable possibility' that class action treatment is appropriate." (*Hamwi, supra,* at p. 471.) " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . .' " (*Sav-On, supra,* at pp. 326–327.) Our review, therefore, is for abuse of that discretion. (*Ibid.*)

█ Here, the trial court properly denied class certification because Miller failed to define an identifiable class of bank customers whose accounts were debited *unlawfully. Miller I* is dispositive on this point. It observes that

Financial Code former section 864,[1] enacted one year after *Kruger* (*Miller I, supra*, 46 Cal.4th at p. 634), "comprehensively governs the manner in which banks may exercise the right to set off debts." (46 Cal.4th at p. 634.) We find it critical here that the Legislature expressly limited the statute's regulatory scope to consumer debt like that concerned in *Kruger*. To that effect, it defined the debt subject to setoff regulation as (1) an interest-bearing obligation or an obligation payable in installments, (2) not reduced to judgment, (3) arising from an extension of credit, (4) to a natural person and (5) primarily for personal, family, or household purposes. (Former § 864, subd. (a)(2); see *Martin v. Wells Fargo Bank* (2001) 91 Cal.App.4th 489, 494–495 [110 Cal.Rptr.2d 653] [former § 864 is inapplicable to *commercial* credit card accounts]; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Negotiable Instruments, § 84, p. 450.) But Miller's proposed class would extend to all individuals "who had at least two accounts with the Bank, one of which received electronically deposited exempt funds, and from which the Bank seized exempt funds to collect sums allegedly owed from a separate account." It thus encompasses a far broader range of transactions than the consumer debt setoffs regulated by former section 864, such as setoffs for deficiencies that do not bear interest and do not arise from an installment account; for deficiencies in commercial accounts; for deficiencies due to bank fees and overdrafts; and for debts not primarily incurred for personal expenses. In short, as the trial court noted, "[t]he proposed description pulls into the class whole categories of *legal* setoffs." (Italics added.)

■ Miller's contention that former section 864 did not limit *Kruger*'s prohibition of setoffs from accounts holding exempt funds ignores *the Supreme Court's explicit recognition in Miller I* that former section 864 was enacted in the wake of *Kruger* and "comprehensively" regulated the legality of bank setoffs. (*Miller I, supra*, 46 Cal.4th at p. 634.) In light of the Legislature's enactment of a comprehensive statute regulating bankers' set-offs in response to *Kruger*, we think it clear that the prohibition of setoffs against exempt funds first judicially established in *Kruger* is statutorily confined to the consumer debt context delimited by former section 864. Moreover, *Kruger* is distinguishable in that it addressed (and prohibited) a banker's setoff for a credit card delinquency. (*Kruger, supra*, 11 Cal.3d at pp. 356, 371). It thus does not provide guidance on the legality of the broad range of possible setoff transactions contemplated by Miller's proposed class.

■ Accordingly, it was not enough for Miller to identify accounts that received exempt funds and were subjected to setoffs for obligations arising in a separate account; he must also be able to show which of those setoffs were

---

[1] Currently Financial Code section 1411. (Historical and Statutory Notes, 30 West's Ann. Fin. Code (2012 supp.) foll. § 1411, p. 241.) For simplicity, our citations are to the statute that was in effect during the litigation below. Further statutory citations are to the Financial Code.

in violation of former section 864. Despite an extended discovery period, Miller failed to show that any means exist to identify a class of bank customers who had been subjected to *unlawful* setoffs, a class the trial court reasonably found was likely to be substantially smaller than the proposed class. Indeed, he has not even attempted to show that this can be done. Class certification, therefore, was properly denied.

## II. *Judicial Estoppel*

Miller argues that, regardless of whether its position is legally correct, the Bank is judicially estopped from asserting that not all two-account seizures are unlawful because, in oral argument in the previous *Miller* cases, the Bank's counsel said that taking fees from one account to cover an overdraft or NSF fee in a second, independent account would be an illegal setoff for an "unrelated debt" within the meaning of *Kruger*. Here, too, we disagree.

During oral argument in this court, the Bank's counsel was asked about the legality of collecting insufficient funds fees and overdrafts incurred in Miller's original account from exempt funds he held in a different account. Counsel responded that the practice "was wrong . . . [;] [w]e have no problem saying that where accounts are independent, a bank cannot take out of exempt funds from one account into another." When the case reached the Supreme Court, Justice Baxter asked this: "Out of curiosity, let's assume that a depositor has a checking account and a separate savings account. . . . Does the bank under the existing law have the right to overdraft protection in a sense as a matter of law by taking the money out of the savings or not?" Here too, the Bank's counsel replied that the Bank could not do so because "[t]hat would be an independent account and that is part of the fundamental difference." Based on these comments, Miller asserts the trial court had no choice but to find the Bank judicially estopped to oppose certification of his two-account class. The trial court rejected this argument, as do we.

■ " ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. . . .' " . . . The doctrine [most appropriately] applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' . . . [¶] ' " 'The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. . . .' " ' . . . Consistent with these purposes, numerous decisions have made clear that judicial estoppel *is an equitable doctrine*, and its application,

even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41], citations omitted (*MW Erectors*).) "The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently [citations], but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. [Citations.] [¶] Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46–47 [119 Cal.Rptr.3d 574].)

■ There was no abuse of discretion here. Viewed in context, the statements on which Miller hangs his hat cannot fairly be said to represent the Bank's "position" (*MW Erectors, supra*, 36 Cal.4th at p. 422) in the earlier litigation. The Bank's point in both arguments was to emphasize the difference between *Kruger*, which was addressed to setoffs between two accounts, and the intra-account balancing at issue in *Miller I*. At that point in the litigation the Bank had no dog in any fight over whether there might also be scenarios in which *two*-account setoffs are permissible, notwithstanding *Kruger*, because the only question then at issue was whether *Kruger* extended to one-account balancing. True, in that context the Bank's counsel fumbled a couple of questions about the distinction between the one- and two-account situations; but those misstatements bear no resemblance to the duplicitous and manipulative tactics that generally warrant application of the judicial estoppel doctrine. (See *MW Erectors, supra*, 36 Cal.4th at p. 422; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1246 [132 Cal.Rptr.2d 57] (*Tuchscher*).) Moreover, neither we nor the Supreme Court adopted counsel's misstatement or accepted it as true; indeed, whether or not *two*-account setoffs are forbidden in all circumstances was irrelevant to both courts' limited determinations as to the validity of *one*-account setoffs. While Miller argues the Bank should nonetheless be estopped from arguing against the two-account class because it "gain[ed] an advantage" from its counsel's misstatements, i.e., it won, there is no reason to believe its counsel's misstatements had anything to do with the Bank's victory. Moreover, while judicial estoppel has been applied even where the party's contradictory positions did not gain it an advantage, that is appropriate only in the " 'rare situation' " where the litigant has made an egregious attempt to manipulate the legal system. (*Tuchscher, supra*, 106 Cal.4th at p. 1246; cf. *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 119 [102 Cal.Rptr.2d 28] [" 'this is as egregious as it gets . . .' "]; see *The Swahn Group,*

*Inc. v. Segal* (2010) 183 Cal.App.4th 831, 848–849 [108 Cal.Rptr.3d 651].) The trial court appropriately refused to apply it here.

## III. *The Merits*

■ Miller also contends the trial court impermissibly ruled on the merits of his claims in the course of deciding the class certification issues. Not so. Miller's principal authority for this argument, *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 443 [97 Cal.Rptr.2d 179, 2 P.3d 27], makes it clear that a court may properly "scrutiniz[e] a proposed class cause of action to determine whether, assuming its merit, it is suitable for resolution on a classwide basis. Indeed, issues affecting the merits of a case may be enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses." (Accord, *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1091–1092 [56 Cal.Rptr.3d 861, 155 P.3d 268] (*Fireside Bank*); see *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 917 [117 Cal.Rptr.3d 66]; *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1347 [98 Cal.Rptr.3d 568].) That is precisely what the trial court did here, and what it was required to do to decide the issues of overbreadth, ascertainability, commonality and numerosity raised in opposition to class certification.

Miller's other authorities are also inapposite. All stand for the general proposition that the trial court must ordinarily decide whether a class is proper and provide class notification before it rules on the substantive merits of the action (see, e.g., *Fireside Bank, supra,* 40 Cal.4th 1069), or state the general principle that the procedural ruling on class certification usually does not involve a merits determination (see *Sav-On, supra,* 34 Cal.4th at pp. 326–327; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913]; *Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 153 [104 Cal.Rptr.3d 329]; *Hewlett-Packard Co. v. Superior Court* (2008) 167 Cal.App.4th 87, 96 [83 Cal.Rptr.3d 836]). The trial court correctly determined that this case is governed by the exception applicable when class certification issues are "enmeshed" with the merits, rather than by the general rule.

## IV. *Request for Additional Time and Discovery*

Miller's final contention warrants only brief discussion. He maintains he was sandbagged by the court's interpretation of former section 864 and that the element of unfair surprise leaves him entitled to a remand so that he may propose a new class definition and conduct discovery on the number and identity of its members. Nonsense. The Bank's position on former section 864

was no secret, having been squarely set out in its opposition brief and supporting evidence. Nonetheless, Miller did not ask for additional discovery to address that position in his reply. Instead, he bet the farm on his view that *all* two-account offsets against accounts containing exempt funds are unlawful, changing his strategy only after the court issued its adverse tentative ruling. At that point, the court reasonably ruled it was too late for Miller to seek more time to construct a new theory. (See *Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984 [118 Cal.Rptr.2d 715] [decision to grant or deny continuance is committed to the sound discretion of the trial court].)

## DISPOSITION

The order denying class certification is affirmed.

Siggins, J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 2013, S209080. Chin, J., did not participate.