Filed 11/7/13  Carter v. Figueroa Group CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRANDI CARTER, | B240870 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC437344) |
| v. | |
| FIGUEROA GROUP, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Luis A. Lavin, Judge, Barbara A. Meiers, Judge.  Affirmed.

Knapp, Petersen & Clarke and Stephen M. Harris for Plaintiff and Appellant.

Law Offices of Rheuban & Gresen, Steven V. Rheuban and Robert C. Hayden for Defendant and Respondent.

* * * * * *

Plaintiff and appellant Brandi Carter filed a complaint against defendant and respondent Figueroa Group, Inc., alleging a number of Labor Code violations and other employment-related claims.  She sought to certify a class of individuals who performed as nude or semi-nude dancers at a club owned and operated by the Figueroa Group.  The trial court denied the motion, ruling appellant failed to meet her burden to satisfy each element of the community of interest requirement necessary for class certification.  She did not show either that common questions predominated or that she was a typical and an adequate class representative.

We affirm.  Substantial evidence supported the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Parties.*

The Figueroa Group owns and operates Rio Gentlemen's Club (Rio), located in South Central Los Angeles.[1]  Pursuant to a permit issued by the City of Los Angeles, Rio offers nude and semi-nude live entertainment, provided by dancers who enter into lease agreements with Rio.  Under the lease agreements, dancers leased or rented from Rio a non-exclusive right to use the stage area and other portions of the premises for the purpose of performing nude, semi-nude or bikini entertainment.  Each dancer charged each customer independently, and the customer paid the dancer directly.  The lease agreements also required each dancer to pay "rent" for each private dance in a set sum according to whether the dance was a nude, topless or bikini dance, and to pay a set fee for dancing on the stage.  The lease agreements further provided that the parties agreed any amounts a dancer received from a customer beyond the set fee "constitutes 'tips' as defined by law and shall remain exclusive property of [the] performer."

Appellant has been the lead plaintiff in other cases against clubs that provide nude and semi-nude dancing.  She did not recall where Rio was located nor the exact time period she worked there, estimating she was there for approximately three months sometime in mid-2006.  She did not recall how she came to work at Rio or anything

---

[1]     For simplicity, we refer to the Figueroa Group and Rio interchangeably as "Rio."

about her first day of work. Though she did not recall doing so, she assumed she signed a contract because that is what she typically did in order to dance at a club. She did not believe that she provided her social security number on the contract. She did not recall anything about other Rio dancers, managers or employees. She did not recall what type of dances she did at Rio or the amount she charged for them. She did not recall how much money she made while working at Rio. On the basis of her experience with other clubs, she did not believe there was any contractual requirement at Rio that she tip employees such as bartenders or parking attendants, though the practice was implied. Appellant stated that while she could physically leave before the end of a shift, she could not leave and come back whenever she wanted.

### *Pleadings and Class Certification Motion.*

Appellant filed her initial complaint in May 2010 and the operative first amended complaint in September 2010. She brought the complaint on her own behalf and on behalf of dancers who worked at Rio providing nude, semi-nude and/or bikini entertainment for the period of time beginning four years before commencement of the action through entry of judgment. She alleged that all dancers had been misclassified as independent contractors instead of employees, and on that basis alleged eight causes of action for failure to pay minimum wages or overtime in violation of Labor Code sections 1194, subdivision (a) and 1197, subdivision (a);[2] unlawful deduction of wages in violation of sections 221 and 224 and Industrial Wage Commission (IWC) Orders; unlawful tip collection in violation of section 351; failure to provide uniforms in violation of an IWC Order; failure to provide rest and meal breaks in violation of section 226.7; failure to timely pay wages in violation of section 203; violation of Business and Professions Code section 17200; and failure to provide itemized wage statements in violation of section 226, subdivision (a)(2). She sought damages in the form of wages, penalties and restitution.

---

[2] Unless otherwise indicated, all further statutory citations are to the Labor Code.

3

Rio answered and filed a cross-complaint for declaratory relief, unjust enrichment and restitution. In turn, appellant answered the cross-complaint.

Appellant filed a motion for class certification in July 2011 and later replaced it with the operative motion filed in February 2012, seeking to certify a class of "[a]ll persons who performed as nude and semi-nude dancers for Figueroa Group, Inc. dba Rio Gentlemen's Club . . . from May 7, 2006, to the date of entry of judgment." She contended that at least 106 dancers worked at Rio during the relevant time period, and her claims raised common issues of law and fact concerning their misclassification as independent contractors and tip misappropriation. In support of her motion she submitted copies of lease applications and lease agreements signed by other dancers between 2007 and 2010; deposition excerpts from Majid Ahmadi, who produced Rio's records; and a June 2001 opinion letter from the California Department of Industrial Relations, Division of Labor Standards Enforcement, interpreting section 350, subdivision (e). Attorneys for appellant also submitted declarations attesting to their class action experience, including wage and hour matters.

Appellant offered her own declaration about working at Rio. Having refreshed her recollection by reviewing a work log from her work at a different club, appellant recalled working at Rio and that during that time she worked approximately three days per week for six to eight hours at a time. She also recalled that Rio set the price for private, off-stage dances and that the dancer would be required to pay that fee to Rio. She also recalled that she was required to pay a stage fee, that she was not free to leave the premises and return, and that she would be subject to a penalty for arriving late.

Appellant's boyfriend, Jonathan Stradford, submitted a declaration about his recollection of appellant's working at Rio in 2006. Finally, appellant submitted declarations from five women who averred they worked at Rio for varying periods of time between 2006 and 2011. They generally averred that Rio charged each dancer a fixed sum for every private dance and charged a daily stage fee. They also recalled that Rio had minimum days per week and hours per day requirements, and that they were not free to leave the premises and return.

4

Rio opposed the motion, arguing that class certification should be denied because common questions of law and fact did not predominate and appellant was not a typical or an adequate class representative. It submitted declarations from Rio employees, including managers, waitresses and disc jockeys, none of whom knew appellant or ever saw her at Rio. They stated that while dancers frequently do tip the staff there is no requirement they do so, and that they observed dancers leaving the premises and returning throughout the day or evening. Three Rio managers averred that Rio's policies require dancers to complete an application before dancing; they do not require dancers to perform for a minimum number of days per week or hours per day; they permit dancers to take breaks and/or leave the premises; and they do not require dancers to tip staff. Rio also submitted declarations from three customers, who averred they often negotiated the price for dances. Rio offered excerpts from appellant's January 2012 deposition. It also offered over 40 prepared declarations filled in by a number of Rio dancers indicating that they did not desire to be a part of appellant's lawsuit and did not want to be treated as an employee by Rio. They also indicated they were free to negotiate their arrangement with Rio and were free to leave the premises and return when dancing.

Rio filed evidentiary objections to portions of appellant's declaration and the five dancers' declarations, and appellant filed evidentiary objections to the dancers' and managers' declarations offered by Rio. In support of her reply, appellant offered additional deposition excerpts from her deposition and Ahmadi's deposition, copies of text messages between her counsel and a dancer at Rio who had submitted a declaration in support of Rio's opposition to class certification, and her own supplemental declaration about her refreshed recollection. Rio filed additional evidentiary objections to the new evidence.

Following a March 13, 2012 hearing, the trial court denied the motion for class certification. It ruled that while appellant met her burden to show a sufficiently ascertainable and numerous class, the evidence failed to show her claims were sufficiently typical or that she would be an adequate class representative. Evaluating each of appellant's individual contentions, the trial court further ruled that common

5

issues did not predominate and that a class action was not a superior method of resolving the action.  The trial court also sustained Rio's first set of evidentiary objections, sustained two of appellant's evidentiary objections and overruled the balance of the objections.

This appeal followed.

## DISCUSSION

Appellant contends the trial court improperly denied class certification for multiple reasons, asserting that the trial court committed legal and factual errors in evaluating appellant's showing.  We find no merit to her contentions.

## I.     Legal Principles Governing Class Action Certification.

"California courts have long viewed class actions as '"serv[ing] an important function in our judicial system.  By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ."'  [Citations.]  This state's public policy supports the use of class actions to enforce California's minimum wage and overtime laws for the benefit of workers.  [Citations.]  However, 'because group action . . . has the potential to create injustice, trial courts are required to "'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.'"'  [Citations.]"  (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 987 (*Dailey*).)

Code of Civil Procedure section 382 provides that a class action may be brought "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  The trial court may certify a class when the plaintiff meets his or her burden to establish the existence of an ascertainable class and a well-defined community of interest.  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103–1104; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913.)  "The community of interest requirement embodies three factors:  (1) predominant common questions of law or fact;

6

(2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470; accord, *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326; *Dailey, supra*, 214 Cal.App.4th at p. 988.) Moreover, "[a] class action should be certified only if it will provide substantial benefits both to the courts and the litigants. [Citations.]" (*Washington Mutual Bank v. Superior Court, supra*, at p. 914.)

Class certification does not focus on the merits of the dispute, but rather on the procedural issue of what types of questions are likely to arise in the litigation—common or individual. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at pp. 326–327; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439–440.) Nonetheless, "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them. [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1023–1024.) But the existence of some common issues of law and fact does not dispose of the class certification issue. (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at pp. 1108–1109; *Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at p. 913.) To justify class certification, a class plaintiff is required to establish the "questions of law or fact common to the class predominate over the questions affecting the individual members." (*Washington Mutual Bank v. Superior Court, supra,* at p. 913; accord, *Lockheed Martin Corp. v. Superior Court, supra,* at p. 1108.) "'[I]f a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate. [Citation.]' [Citations.]" (*Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 732.) Thus, "'[a] court may properly deny certification where there are diverse factual issues to be resolved even though there may also be many common questions of law.'" (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154; accord, *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1353.)

Our review of an order granting or denying class certification "is narrowly circumscribed." (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1022.) The *Brinker* Court elaborated: "'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Ibid.*; see also *Dailey, supra*, 214 Cal.App.4th at p. 991 ["if the parties' evidence is conflicting on the issue of whether common or individual questions predominate . . . the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met"].)

"[W]hen denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling." (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.) The trial court need only state one valid reason for denying the motion. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 436.)

## II.     Substantial Evidence Supported the Trial Court's Denial of Class Certification.

Addressing the first prong of appellant's burden to show entitlement to class certification, the trial court ruled appellant established the putative class was sufficiently ascertainable. It denied certification on the ground appellant failed to establish the second prong—a well-defined community of interest—finding she failed to show that

8

common issues predominated or that she was a typical and adequate class representative. It further ruled appellant failed to show class treatment was superior. Substantial evidence supported the trial court's order.

### A. Common Questions of Law and Fact Did Not Predominate.

To meet her burden to show that common questions of fact or law predominated over individual issues, appellant was "required to do more than simply show that common issues exist. Rather, [she] needed to 'place substantial evidence in the record that common issues predominate.' [Citation.]" (*Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1354–1355.) "'The "ultimate question" the element of predominance presents is whether "the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." [Citations.] The answer hinges on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.' [Citation.]" (*Id.* at p. 1355, quoting *Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at pp. 1021–1022.)

### 1. Misclassification.

The trial court described appellant's theory of recovery: "The basis of the claims alleged by Plaintiff on behalf of the class is that Defendant misclassified the dancers as independent contractors instead of employees. That is, Plaintiff alleges that the circumstances of the dancers' work for Defendant make them employees instead of contractors. As a result of the misclassification, Plaintiff alleges Defendant did not pay the dancers minimum wage or overtime wages, made unlawful deductions from their wages, unlawfully misappropriated their tip income, failed to provide them with meal and rest breaks, failed to provide them with itemized wage statement[s] and failed to provide them with uniforms."

9

The primary consideration in determining whether an individual is an employee or an independent contractor is the employer's right to control the manner and means by which the work is performed. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350; *Varisco v. Gateway Science & Engineering, Inc.* (2008) 166 Cal.App.4th 1099, 1103.) "Under this rule, the right to exercise complete or authoritative control must be shown, rather than mere suggestion as to detail. A worker is an independent contractor when he or she follows the employer's desires only in the result of the work, and not the means by which it is achieved." (*Ali v. U.S.A. Cab Ltd., supra,* 176 Cal.App.4th at p. 1347.) As secondary factors, the trial court may also consider "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer–employee. [Citations.]" (*Borello, supra,* at p. 351.) These factors are not applied mechanically; they are intertwined and the weight to be given each factor varies according to the evidence presented in each case. (*Ibid.*)

Addressing the issue of control, the trial court acknowledged that some of the secondary factors weighed in appellant's favor. Evidence that the dancers were not engaged in a distinct occupation, that no particular skill was required and that Rio provided some of the instrumentalities and place of work weighed in favor of a showing of control. Nonetheless, it concluded that the weight of the evidence showed Rio did not control the manner and means by which the dancers' work was performed, and determined appellant failed to show "that common questions can be used to determine the degree of control exercised by Defendant over the dancers." It relied on the 43 dancer declarations submitted by Rio, in which dancers generally averred that they retained

10

flexibility to work at other clubs in addition to Rio; they negotiated the terms of the written lease agreements, including eliminating the requirement of providing advance notice when they will work, reducing the daily stage fee specified in the lease agreement and negotiating what they will charge customers for dances; they were free to go to and from Rio when dancing; and they were not required to tip Rio staff. The trial court also cited the five declarations submitted by dancers in support of appellant's motion, noting that the declarations lacked any detail concerning the extent to which the lease agreements governed the terms of the dancers' relationship with Rio and explaining that, in any event, the declarations conflicted with the dancer declarations submitted by Rio. Appellant's evidence also conflicted with Rio's manager's declaration, which averred that Rio did not have control over what customers paid the dancers. (See *Arenas v. El Torito Restaurants, Inc., supra,* 183 Cal.App.4th at p. 734 ["having credited defendants' evidence over plaintiffs', the trial court could reasonably conclude there was insufficient evidence of widespread misclassification, hence plaintiffs' theory of recovery was not susceptible to common proof"].)

Appellant argues that the dancer declarations submitted by Rio failed to show that individualized determinations predominated, because the extent to which Rio maintained control over the dancers' work—or a lack thereof—involved a common question of law. She misperceives the nature of the dancers' declarations. The dancers did not aver that Rio maintained the same limited level of control over all of them. Instead, they declared they had the ability to negotiate various provisions of the lease agreements. The evidence therefore suggested that Rio had varying relationships with and degrees of control over each dancer. These circumstances are akin to those in *Ali v. U.S.A. Cab Ltd., supra,* 176 Cal.App.4th at page 1350, where the appellate court affirmed a ruling that a proposed class of taxi drivers was not suitable for class treatment, despite the fact that the taxi company entered into standard leases with drivers. It stated: "Although the leases and training manuals are uniform, the court reasonably found the testimony of putative class members would be required on the issues of employment and fact of damage. Plaintiffs argued at the hearing that proof of employment as to any purported class member would

11

constitute proof as to all purported class members, but the court reasonably rejected the argument that a single set of facts predominates. As the court explained after it issued its tentative ruling, 'the trial [of a class action,] I would expect[,] would be a parade of drivers' presenting individual issues." (*Ibid.*; accord, *Dailey, supra,* 214 Cal.App.4th at pp. 996–997 ["Based on Sears's evidence, the trial court reasonably could infer not only that the proposed class members have flexibility in applying the allegedly 'uniform' policies and practices in their stores, but also that the day-to-day tasks of Managers and Assistant Managers, rather than being uniformly dictated by these few policies and practices, vary greatly depending on a number of factors"]; *Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1427 [affirming denial of class certification order that stated "'although Defendant has made a single policy decision to classify hundreds of GMs as exempt, that single policy decision may be improper as to some putative class members but proper as to others'"].)

Alternatively, appellant argues that the trial court's weighing of the evidence was affected by erroneous evidentiary rulings. She contends the trial court abused its discretion by sustaining objections to portions of the dancer declarations she submitted and by disregarding a text message exchange between one of the Rio declarants and her counsel. The trial court has broad discretion in the admission and exclusion of evidence, and we will not disturb its evidentiary rulings unless there has been an abuse of that discretion and the appellant has shown a reasonable probability that a more favorable result would have been reached absent the error. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432; *Smith v. Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 519.)

Rio objected to the dancer declarations submitted by appellant on the grounds of lack of personal knowledge (Evid. Code, § 702) and hearsay (Evid. Code, § 1200) to the extent the declarants described the experiences of dancers other than themselves.[3] The

---

[3] Three pages are missing from Rio's objections in the Clerk's Transcript. It is appellant's burden to provide an adequate record on appeal. (*Amato v. Mercury Casualty*

trial court sustained the objections.  We find no abuse of discretion, as the declarations purported to describe generally the relationship between Rio and other dancers without any indication that the declarants' averments were based on their personal observations. (See *Myricks v. Lynwood Unified School Dist.* (1999) 74 Cal.App.4th 231, 240, fn. 12 [lack of personal knowledge and hearsay objections properly sustained to declaration by former school principal about accident that occurred after his employment had terminated].)  In any event, appellant has failed to demonstrate how she was prejudiced by the rulings, as the trial court expressly weighed the declarations against those submitted by Rio, finding that the extent of Rio's control was disputed.  This dispute would have existed regardless of whether appellant's dancer declarations were limited to their experience or described the experiences of other dancers.  (See *Black v. Black* (1949) 91 Cal.App.2d 328, 336 [erroneous exclusion of cumulative evidence not prejudicial].)

The trial court overruled Rio's objection to evidence of a text message exchange between appellant's counsel and a dancer, Giselle Ojeda, who texted that she and other dancers were forced to sign declarations in support of Rio.  Appellant's contention that the trial court improperly disregarded this text message exchange is nothing more than a request that we reweigh the evidence.  The trial court expressly observed that Ojeda was not credible, as she submitted a declaration in support of Rio and then offered evidence that contradicted her declaration.  The "appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact."  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 958; accord, *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 188 [appellate court may neither reevaluate credibility nor reweigh the evidence]; *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 [same].)  Accordingly, we find no merit to appellant's

---

*Co.* (1993) 18 Cal.App.4th 1784, 1794.)  To the extent the record is inadequate, we make all reasonable inferences in favor of the trial court's order.  (*Ibid.*)

evidentiary challenges in connection with the trial court's finding that she failed to establish a predominance of common issues.

Nor do we find any basis to disturb the trial court's conclusion in light of the series of cases appellant discovered after she submitted her opening brief. The California cases cited in her letter brief involve distinctly different facts than the evidence credited by the trial court. (See *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1146–1147 [misclassification claim amenable to class treatment where, among other things, evidence showed each class member was required to work full time and told how to prioritize each day's jobs, was not permitted to deviate from time and place job rules, received hourly pay and submitted timesheets, and was required to use the defendant's tools on the job]; *Ghazayan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1528–1529, 1536–1537 [drivers' claim that they should be paid for waiting time between jobs while on call amenable to class treatment because it involved application of a uniform policy, even though the duration of waiting times could differ among drivers].) Appellant's federal cases merely involve class certification rulings based on the particular evidence presented before the trial court in the first instance. (See *Guifu Li v. A Perfect Franchise, Inc.* (N.D. Cal. 2011) 2011 WL 4635198 at *7–12 [common issues predominated on question of whether massage therapists were independent contractors or employees where employer's policies and evidence bearing on a number of secondary factors considered in the independent contractor analysis established employer's level of control]; *Bibo v. Federal Exp., Inc.* (N.D. Cal. 2009) 2009 WL 1068880 at *9–14 [class treatment appropriate for certain subclasses of Federal Express drivers alleging specific Labor Code violations]; *Alba v. Papa John's USA, Inc.* (C.D. Cal. 2007) 2007 WL 953849 at *6–8 [district court expressly weighed evidence to determine the defendant's policies were uniformly applied and concluded managers and other subclasses alleging Labor Code violations therefore raised common questions]; *Wren v. RGIS Inventory Specialists* (N.D. Cal. 2009) 256 F.R.D. 180, 205 [noting "the parties have waged an all-out evidentiary war in connection with" the class certification motion, the court concluded "there is sufficient evidence to conclude that there are common

14

questions relating to donning and waiting time that arise from a centralized policy or practice on the part of RGIS"]; *Otsuka v. Polo Ralph Lauren Corp.* (N.D. Cal. 2008) 251 F.R.D. 439, 442–443, 445 [on the basis of competing evidence, former sales associate and cashier plaintiffs met their burden to satisfy commonality requirement concerning alleged Labor Code violations].)

## 2. Misappropriation of tip income.

In its order denying certification, the trial court ruled it need not evaluate appellant's Labor Code claims since they were premised on the argument that the dancers were misclassified as independent contractors. Nonetheless, the trial court alternatively explained that even if appellant had met her burden to show common questions concerning misclassification, certain alleged Labor Code violations would be amenable to class treatment while others would not. In her opening brief, appellant contends both her third cause of action for illegal tip collection in violation of section 351, and her seventh cause of action for violation of Business and Professions Code section 17200 to the extent it was premised on that claim, were sufficient for class certification, as those claims were viable whether she was an independent contractor or employee.[4] (See Lab. Code, § 350, subds. (b) & (c).)

Expressly accepting appellant's argument that her misappropriation of tip income claim was not dependent on her status as an independent contractor or employee, the trial court ruled: "Plaintiff has not submitted evidence to establish a class-wide policy concerning whether Defendant requires dancers to pay it a portion of the dancers' tips. In fact, Defendant has submitted several declarations from its managers stating that Defendant does <u>not</u> require dancers to pay it or its employees any portion of their tips.

---

[4]     Appellant failed to separately address any other alleged Labor Code violations. We therefore find appellant has waived any challenge to the trial court's ruling on those claims. (See, e.g., *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue "constitutes a waiver or abandonment of the issue on appeal"]; *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 ["point not raised in opening brief will not be considered"].)

[Citations.] Accordingly, Plaintiff has not met her burden that there is a class-wide policy concerning conversion or misappropriation of the dancers' tips by Defendant."

Appellant fails to challenge the evidentiary basis for the trial court's conclusion. The evidence established the lease agreements did not obligate the dancers to tip Rio staff, and multiple managers averred that tipping was voluntary. Without comment on this evidence, appellant attacks only the alternative basis for the trial court's ruling, which was that appellant could not maintain a private cause of action for violation of section 351 as a matter of law. (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 595 ["we conclude that [Labor Code] section 351 does not contain a private right to sue"].) Appellant argues that by finding appellant could not maintain a cause of action under the statute, the trial court improperly determined the merits of her claim. Though we acknowledge that "'[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them,'" (*Hendleman v. Los Altos Apartments, L.P.* (2013) 218 Cal.App.4th 1380, 1391), we need not rely on that principle. The trial court based its ruling on the lack of evidence showing a class-wide policy requiring dancers to tip Rio staff—not on the inability of appellant to maintain a private cause of action. In view of the evidence showing that any tips paid by dancers were voluntary, substantial evidence supported the trial court's conclusion that common issues would not predominate any claims based on tip misappropriation.

**B.     *Appellant Was Neither a Typical nor an Adequate Class Representative.***

In connection with appellant's burden to satisfy the community of interest requirement, "'[t]he crucial inquiry centers upon whether the plaintiffs are truly representative of the absent, unnamed class members.' [Citation.]" (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 663.) "'"The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent. [Citation.]" [Citation.]' [Citation.] The class representative must be situated similarly to class members. [Citation.] 'It is the fact that the class plaintiff's claims are typical and his representation of the class adequate which gives legitimacy to permitting

16

him to bind class members who have notice of the action. [Citations.]' [Citation.]" (*Id.* at pp. 663–664.)

Finding appellant failed to show her claims were typical of the class, the trial court explained: "Although [appellant] submitted some evidence (in the form of her declaration and a declaration from her boyfriend) that she worked as an exotic dancer at Rio, at her deposition she was unable to recall anything specific about working as a dancer at Rio. For example, Plaintiff Carter could not recall where Rio was located, whether she signed an agreement to work there, with whom she spoke to about working there (or what they looked like), what they spoke about, whether she danced the first day she worked there, the names of the other dancers, how much the dances cost, the manager's name, or any other detail about her work experience at Rio." The trial court also observed that appellant was unable to produce any documents showing she worked at Rio, claiming they were stolen from her car. It observed that appellant's deposition testimony was consistent with the evidence from Rio, which found no records showing appellant worked there and submitted declarations from multiple dancers and employees who did not recall ever working with her.

Against appellant's deposition testimony and Rio's evidence, the trial court evaluated appellant's declaration that was designed to rehabilitate her testimony. It recognized that appellant averred she was able to refresh her recollection by reviewing record and photographs from another club, and described appellant's recollection of the time frame she worked at Rio and her last day of work. The trial court also acknowledged the declaration from appellant's boyfriend, Stradford, which stated that appellant worked at Rio.

The trial court weighed this conflicting evidence and ruled: "Plaintiff's declaration is not credible. [Citation.] It is difficult to believe that Plaintiff Carter did not attempt to refresh her recollection prior to sitting for her deposition in this case and only afterwards was able to recall with specificity details like the amount Rio charges for dance fees." The trial court further found that Stradford's declaration contained no statements demonstrating his personal knowledge that appellant worked at Rio; he

17

declared only that they discussed her working at Rio and he was opposed to the idea. The trial court found "that Plaintiff has not shown that she worked as a dancer at Rio during the relevant time period. As such, she has not demonstrated that she is a member of the proposed class." Because appellant could not demonstrate she was a member of the proposed class, the trial court further found "there is no indication that she has interests that are typical of the other class members or will represent the interests of the class." It further observed that appellant had offered no evidence to show she understood her obligations as a class representative.

Appellant raises several challenges to the trial court's evidentiary rulings sustaining Rio's objections to her declaration. But we need not address her arguments because, regardless of the evidentiary rulings, the trial court expressly considered appellant's declaration and found it not credible. It is well established that "'questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses . . . and the determination of [any] conflicts and inconsistency in their testimony are matters for the trial court to resolve.' [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 334 [resolving conflicts in declarations submitted in connection with a class certification motion]; see also *Dailey, supra*, 214 Cal.App.4th at pp. 991–992 [trial court acts within its discretion in crediting one party's evidence over another's in ruling on a class certification motion].) As the trial court was within its discretion to credit appellant's deposition testimony over her declaration, appellant cannot demonstrate she suffered any prejudice from the evidentiary rulings.

Nor do we find any support for appellant's argument that the trial court's evidentiary ruling improperly relied on principles governing summary judgment motions. In connection with its credibility determination, the trial court cited *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087. There, the court affirmed a grant of summary judgment and reiterated the general principle that "[w]here a declaration submitted in opposition to a motion for summary judgment clearly contradicts the declarant's earlier deposition testimony or discovery responses, the trial court may

18

fairly disregard the declaration and "'conclude there is no *substantial* evidence of the existence of a triable issue of fact.'" [Citation.]" (*Ibid*.) Regardless of the citation, the trial court was permitted to weigh the conflicting evidence in connection with its determination whether appellant met her burden to show she was a typical and adequate representative. (See *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 328 ["'[w]here a certification order turns on inferences to be drawn from the facts, "'the reviewing court has no authority to substitute its decision for that of the trial court'"'"].) Substantial evidence supported the trial court's determination that appellant failed to meet her burden.[5]

### C.     The Trial Court Acted Within Its Discretion in Declining to Continue the Hearing to Permit Appellant to Find a New Representative or to Depose Rio's Dancers.

Finally, appellant contends that, at a minimum, she should have been given additional time to conduct discovery to find a suitable class representative and/or to depose Rio's dancers "to establish coercion and the predominance of common issues." The trial court has wide discretion in determining whether to grant or deny a continuance, including a continuance of a class certification hearing. (*Dailey, supra,* 214 Cal.App.4th at p. 1004; *Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 11–12.) "The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.] The burden rests

---

[5]     Though appellant does not address the trial court's final finding, we note that substantial evidence supported its conclusion that appellant failed to show there would be substantial benefits from class treatment. The evidence offered by Rio as well as appellant's deposition testimony supported the trial court's conclusion that "[s]ince management of the claims will require an inquiry into the working conditions of each dancer, a class action is not a superior procedure for resolving this action." (See *Soderstedt v. CBIZ Southern California, LLC, supra,* 197 Cal.App.4th at p. 157 [class treatment not superior where individualized issues predominate]; *Ali v. U.S.A. Cab Ltd., supra,* 176 Cal.App.4th at p. 1353 [same].)

on the complaining party to demonstrate from the record that such an abuse has occurred. [Citation.]" (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984–985.)

Appellant has failed to demonstrate any abuse of discretion. This action has been pending since May 2010. Throughout 2011, the parties engaged in discovery. Appellant initially filed her motion for class certification in July 2011, and in December 2011 the parties proposed to continue the hearing on the motion to June 2012. The trial court limited the continuance to March 2012, stating in its order: "No further extensions shall be granted. The parties' failure to complete discovery shall not constitute good cause to continue this hearing." Appellant then filed a second motion for class certification in February 2012, with a March 2012 hearing date. The trial court denied Rio's ex parte application to depose the dancers who submitted declarations on appellant's behalf. As part of its reply to the motion, appellant requested a continuance to conduct further discovery.

Though the trial court did not address appellant's continuance request in its written order, at the hearing on the class certification motion appellant's counsel argued that his text message exchange with one of the dancers "support[ed] at least some inquiry into the validity of" the other declarations, characterizing them as stating only broad conclusions without factual substantiation. The trial court disagreed and reminded appellant that she was the moving party and her arguments about the possibility of an issue were more suited to opposing a summary judgment motion. The trial court stated to appellant: "[T]his is your motion. You have the burden of proof to show all of the elements for class certification . . . ."

We are guided by *Dailey, supra*, 214 Cal.App.4th at pages 1004 to 1005, where the court affirmed the denial of a request to continue a class certification hearing to enable the moving party to conduct additional discovery. There, the plaintiff had approximately one and one-half years while the action was pending to conduct discovery, and he failed to show both how additional discovery was essential to his motion and why he had been unable to conduct sufficient discovery during the pendency of the action. (*Ibid.*) Emphasizing that "[t]he law requires not that the parties be able to conduct a

20

comprehensive investigation, but rather, only that they have 'a chance to conduct *reasonable* investigation' in advance of the class certification determination," the court concluded the moving party had sufficient time to conduct a reasonable investigation, and the trial court was therefore within its discretion to deny a continuance. (*Id.* at p. 1005.)

Here, the action had been pending for almost two years at the time appellant's class certification motion was heard. Appellant has failed to explain why that time period was insufficient for her to obtain information from others with whom she assertedly worked or for her to determine that her lack of recollection about her experience at Rio could render her an unsuitable class representative. The trial court was well within its discretion to hold the class certification hearing on March 13, 2012, without any further continuance.

## DISPOSITION

The order denying class certification is affirmed. Rio is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.