Filed 2/25/14  Carroll v. Arthroscopic & Laser Surgery Center of San diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TIM CARROLL et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>ARTHROSCOPIC & LASER SURGERY CENTER OF SAN DIEGO et al.,<br><br>        Defendants and Respondents. | D063081<br><br><br>(Super. Ct. No. GIC806902, GIC806908) |

APPEAL from an order of dismissal of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Law Office of Marc O. Stern, Marc O. Stern; Boudreau Williams and Jon R. Williams for Plaintiffs and Appellants.

Higgs, Fletcher & Mack, John Morris, William A. Miller and Jason C. Ross for Defendants and Respondents Arthroscopic & Laser Surgery Center of San Diego, SHC San Diego, Inc. and HealthSouth Corporation.

Lewis Brisbois Bisgaard & Smith, Marilyn R. Moriarty and Julie R. Dann for Defendant and Respondent Gary Losse.

Davis, Grass, Goldstein, Housouer, Finlay & Brigham, Ben Housouer and Jeffery W. Grass for Defendants and Respondents Bryon King and Paul Murphy.

Edleson & Rezzo, L.B. Chip Edleson and Joann Rezzo for Defendants and Respondents Oasis MSO, Inc., David Chao and Oasis Sports Medical Group, Inc.

This appeal by plaintiffs and appellants Tim Carroll, Anna Goode and Paula Hamma (Appellants) arises from the trial court's order striking all class allegations in this action seeking recovery of restitutionary relief against a number of health care providers, based on payments Appellants made for surgical and medical treatments performed or prescribed for them by defendant and respondent Dr. Gary Losse, M.D. During the 1997-1999 time frame in which Appellants' surgeries were performed by Dr. Losse, he was the medical director of certain defendant and respondent health care facilities, and was allegedly known by colleagues to be "sufficiently addiction-impaired during all relevant times that he was not qualified to practice medicine." In the two amended, consolidated complaints (the operative pleadings), Appellants generally alleged that "none of them would have paid Dr. Losse anything to have him perform surgeries on them in such a state," and thus they are entitled to recover individually for financial injury incurred for the "valueless" services rendered, received and remunerated. They assert individual, representative, and class causes of action for rescission based on fraud, damages based on

2

breaches of fiduciary duty, and relief under the unfair competition law (the UCL, Bus. & Prof. Code, § 17200 et seq.).[1]

The trial court's order sustained demurrers and motions to strike brought by former professional associates of Dr. Losse, Arthroscopic & Laser Surgery Center of San Diego, L.P. (or "ALSCSD"), SHC San Diego, Inc. ("SHC") and HealthSouth Corporation (sometimes together Respondents). These demurrers and motions attacking the class allegations were joined in by other defendants and respondents, Dr. Losse and his former professional associates Bryon King, M.D., Paul Murphy, M.D., David Chao, M.D., and his corporate entity Oasis Sports Medical Group, Inc., and Oasis MSO, Inc. (again, sometimes all together Respondents). The trial court's ruling resolved the demurrers to Appellants' class allegations as presenting only questions of law, sustained them without leave to amend, and struck all the class claims.

In the portion of this action that is *not* affected by this appeal (since the appeal is directed only to the class allegations), Appellants individually and on a representative basis seek monetary recovery against Respondents on claims for reimbursement of professional fees they paid, related to Dr. Losse's surgeries on each of them. These same motions and demurrers were denied and overruled as to Appellants' individual and UCL representative claims. The trial court's ruling therefore allows Appellants to pursue their individual tort claims, and also their UCL representative cause of action. Here, we

---

[1]    All statutory references are to the Business & Professions Code unless otherwise indicated.

review only the dismissal of the class allegations on Appellants' tort and UCL representative claims, on the grounds stated in the demurrers and motions to strike.

Appellants contend the trial court erred as a matter of law in ruling that their class claims cannot be stated on the theories of fraud, breach of fiduciary duty, or entitlement to UCL relief. According to Appellants, each potential class member undergoing surgery and treatment, during the relevant time periods, was placed in the same legal position by the failure of all Respondents to disclose Dr. Losse's addiction impairment, and the risks it posed to the treatment process. Although Appellants expressly assert that they are not contending in this lawsuit that they sustained bodily injury as a result of the surgeries performed by Dr. Losse, they claim they have pleaded all required elements for recovery of classwide relief for financial and consumer fraud injuries they incurred in the form of (1) repayment of their treatment expenses due to fraud in the inducement, (2) restitution of payments they made while under ignorance of necessary facts to allow any fully informed consent to be made for their surgeries (i.e., due to breaches of a doctor's fiduciary duties), and (3) awards of restitution and injunction under the UCL cause of action.

Appellants mainly rely on the operation of section 2280, which forbids the practice of medicine while one is impaired by the influence of any narcotic drug or alcohol, as a common thread to be utilized "on a classwide basis to demonstrate that Dr. Losse was sufficiently impaired during the fairly discrete class period such that his practice of medicine was forbidden by law, as were the concomitant and substantial

4

charges he generated (to all of the Respondents' benefit) for that unlawful treatment."[2]

Appellants also claim that even if they have not now shown a prima facie community of interest among all class members, the trial court should have deferred decision on the propriety of a class action "until an evidentiary hearing has been held on the appropriateness of class litigation."  (*Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154 [medical products liability class action]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 813 (*Vasquez*) [consumer fraud class action allowed to address overcharges for meat and freezer sales].)  Appellants did not, however, suggest to the trial court or to this court any possibilities for discovery that would lead to a more successful allegation of these tort and statutory class claims, within the parameters of the UCL or otherwise.

" 'The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' "  (*Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 988-989 (*Brown*) [disallowing proposed class action on fraud and other theories to challenge the adequacy of medical treatment rendered at a cardiology center].)  Thus, "where there are diverse factual issues to be resolved, even though there may be many common questions of law" (*ibid.*), and where "the ability of each member of the class to recover clearly depends on a

---

[2]    Section 2280 reads:  "No licensee shall practice medicine while under the influence of any narcotic drug or alcohol to such an extent as to impair his or her ability to conduct the practice of medicine with safety to the public and his or her patients. Violation of this section constitutes unprofessional conduct and is a misdemeanor."

separate set of facts applicable only to [one], then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage." (*Id*. at p. 989.)

The operative pleadings reveal as a matter of law that this is not an appropriate class action, because individual issues on the effect of any misrepresentations arguably made to induce agreements for treatments, and any consequent financial injury, substantially predominate over any common questions. "[T]he difference between what the plaintiff paid and the value of what the plaintiff receives is a proper measure of restitution. [Citation.] In order to recover under this measure, there must be evidence of the actual value of what the plaintiff received." (*In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 131.) Appellants contradictorily allege they, as a class, received medical services that did not injure them, and that Dr. Losse was still a licensed medical provider when those surgeries took place, but that they nevertheless should not have been held responsible to pay for those "valueless" surgeries. Appellants' allegations that Dr. Losse was known by some Respondents to be under a legal disability that should have voided their consents to contracts for medical care are only legal conclusions and not allegations of ultimate fact, and properly were found not to survive demurrer. (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 807 (*Kennedy*) [" ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' "].)

Rather, these operative pleadings reveal that the ability of each potential member of the class to recover restitutionary relief or damages depends not upon common issues

of fact and law, but upon individual analysis and proof of separate sets of facts about whether Dr. Losse was addiction-impaired at the time of each surgery or treatment, and whether he or other Respondents caused each Appellant to incur compensable harm or damage, by not receiving the value of the services as charged and paid. As a class, Appellants cannot successfully divorce the factual and legal issues of whether each of them sustained any bodily injury from the surgeries, in order to claim as a matter of law that the surgeries were valueless, solely because of Dr. Losse's alleged addiction-impairment status and consequent potential trouble with his licensing status during the relevant time periods. Instead, proof of each class member's individual medical condition, before and after treatment, would be necessary to obtain rescission due to fraud, or to demonstrate that each class member did not receive the actual value of what they paid, as opposed to what they received. (Civ. Code, § 3343, subd. (a).) Likewise, Appellants' class claims do not allege any community of interest in the pleading and proof of the claimed recovery for financial injury from " 'all surgical and rehabilitation fees and costs associated with each of the Plaintiffs' treatments,' " based on any lack of informed consent.

Due to the unavoidable contradictions within the pleadings regarding the types of injuries sustained or not sustained, no class treatment would be appropriate for the determinations of liability and causation, to enable an award of restitutionary redress for financial injuries on the theories advanced. We agree with the trial court's statement that class treatment of these claims would not be appropriate, because "individualized questions predominate these proof requirements. As stated in *Brown,* the class claims

7

pled present 'a veritable quagmire of tough factual questions which can only be resolved by individual proof.' (*Brown[, supra],* 151 Cal.App.3d at [p.] 989.)"  Moreover, no realistic possibility of amendment has been offered, and we affirm the ruling dismissing the class allegations.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Background of Pleadings

For purposes of analyzing the demurrer ruling, we take the facts properly pleaded to assess whether they may state a cause of action as a matter of law.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  This rule is subject to the qualification that a demurrer does not admit as true " 'contentions, deductions or conclusions of fact or law.' "  (*Ibid.*; *Kennedy, supra,* 43 Cal.App.4th 799, 807.)

In 2003, Appellants filed two separate class and UCL representative actions:  First, against Oasis and its shareholder physicians (then Drs. Losse, Murphy, King, and Chao; now the fourth amended complaint); and second, against the ALSCSD/HealthSouth rehabilitation entities associated with Dr. Losse (now the second amended complaint). Appellants state that between August 1997 and November 1999, "well over 500 patients per year" underwent surgery by Dr. Losse while he was purportedly "addiction-impaired" from narcotics abuse, but was nevertheless practicing medicine in violation of California law.  In 1999, the California Medical Board intervened, and subsequently Dr. Losse began treatment for his addiction.

The operative pleadings were filed May 30, 2012, after a series of preliminary proceedings and rulings that need not be summarized here.  Generally, Appellants pled

8

that at all relevant times, Dr. Losse was sufficiently addiction-impaired that "his surgical judgment and skills were affected to a degree that substantially increased the risk of injury to his patients." Appellants' class representation requests seek to act for thousands of potential patient class members. However, Appellants expressly excluded from the class any persons seeking recovery for bodily injury or any general damages.

In the class claims, Appellants seek restitution for financial injury on a consumer fraud basis. They claim Dr. Losse was sufficiently impaired at all relevant times such that his practice of medicine would have been against the law when he performed surgery on them, and these were common circumstances giving rise to a community of interest for their claims. They argue that "the practice of medicine as a valuable service presupposes that physicians providing those services have baseline competency. *Where they do not, they cannot practice medicine and receive a fee for their services.*" Appellants assert there is no threshold question to be settled about the "value" of those services, since they had no market value. Appellants claim they could not have given any informed consent for Dr. Losse to perform their surgeries, while they remained ignorant of the risks they ran from his drug addiction and impairment during the treatments with Respondents.

Appellants further claim that all other Respondents ratified, authorized, and approved of Dr. Losse's misconduct, in contravention of the duties of disclosure that they owed to Appellants, who were patients of ALSCSD and the Rehabilitation Center. Based on Respondents' ownership interests in Oasis, ALSCSD, and the Rehabilitation Center, Appellants contend that Respondents each had, but breached, nondelegable duties to

9

disclose all material facts to Appellants before obtaining consents to treatment, and Appellants relied upon the expectation that Respondents would disclose all such material facts to them. However, Respondents withheld those material facts concerning Dr. Losse's addiction-impairment condition, and gained revenue from the more than 500 surgeries per year performed by Dr. Losse at ALSCSD while he was addiction-impaired, as well as revenue from the follow-up rehabilitation care. Those facts were alleged to support class recovery through rescission for fraud, restitution and equitable relief through a constructive trust under the UCL.

### B. Motions to Strike; Demurrers; Rulings

On June 29, 2012, ALSCSD brought its motions to strike and demurrers, asserting the class action was defective on its face, because it alleged "mass-tort" claims, and could not be resolved as a simple "consumer fraud" case. Even though Appellants were not seeking any personal injury damages, their financial injuries still required individualized proof of below standard medical care and lack of informed consent. Thus, each putative class plaintiff "would have to show *liability* (impairment), *causation,* and *damages* (the difference between what each bargained for and what they received)." Respondents contended the proposed class definition was fatally nonascertainable, because it included persons whose surgeries and physical rehabilitation were successful, who would thus not be entitled to restitution of amounts paid. All other Respondents joined in those motions.

In opposition, Appellants argued the facts of this case are remarkably similar to those in other consumer class action cases that were allowed to survive demurrers and motions to strike. (E.g., *Vasquez, supra,* 4 Cal.3d 800, 813, 821-822; *Daar v. Yellow Cab*

10

*Co.* (1967) 67 Cal.2d 695, 713-714 (*Daar*).)[3] They contended there was "no fair market value" associated with a surgery to be performed by a drug-impaired surgeon in contravention of California law, such that they should be entitled to void the illegal contracts they entered into for such surgery. Appellants citied to *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119 (*Birbrower*), for the proposition that attorneys who were not members of the California Bar could not recover contract fees for services provided in California, since their fees agreement was illegal.[4] Appellants explained why they were not seeking recovery for personal injuries, since any such claims would be barred by the applicable limitations period, Code of Civil Procedure section 340.5. Thus, only financial or economic injury was alleged, for all class members who were sold one thing but received something quite different.

As the predicate violations for their UCL claim, Appellants pointed to statutes allegedly violated by Dr. Losse's previous practice while impaired, and Respondents' alleged violation of the same statutes through their "policy/practice of allowing the

---

[3]  In *Daar, supra*, 67 Cal.2d 695, a class was certified of taxicab users seeking recovery of alleged overcharges by a taxi company, because their class allegations established a well-defined community of interest in questions of law and fact affecting the class; i.e., each class member was known to defendant and the exact amount of overcharges could be ascertained from defendant's books and records and from information within defendant's knowledge. (*Id.* at pp. 713-714.)

[4]  In *Birbrower, supra,* 17 Cal.4th 119, 135-140, the New York attorneys who were representing a California client while practicing without California licenses could not recover contract fees for their "illegal local service," but if the illegal portion of the contract were severable, they could pursue a claim for quantum meruit for services validly rendered in New York.

11

practice of medicine by" an impaired physician. (§§ 2280, 2239, 2241; Health & Saf. Code, § 11170 et seq., Pen. Code, § 377.) Reply papers were filed.

In opposition, counsel for Appellants suggested that more discovery might reveal a basis to identify the class members and their damages, which were items of proof. However, at the court's inquiry, Appellants could not suggest any proposed amendments to the legal theories of the operative pleadings. The trial court stated, "I think I understand your case. Your claim is that everybody didn't get what they paid for. They thought they were getting a competent doctor and instead they got this drugged-out doctor and what they want is the difference in value . . . not personal injury."

In its order, the court construed the motions as demurrers, and ruled that Appellants' operative pleadings failed to state any of the class claims. As previously noted, the court had overruled Respondents' demurrers to all the individualized or UCL representative claims of Appellants. In that context, the trial court ruled it was sufficiently alleged that members of the public were likely to be deceived, within the meaning of the UCL, by Respondents' alleged conduct of allowing and facilitating Dr. Losse's continuing practice of medicine and surgeries, despite his addiction-impaired status.

However, on the class claims for restitution or damages based on fraud, concealment, or breach of fiduciary duty related to Dr. Losse' s addiction-impaired condition, the court ruled Appellants as a class had shown no reasonable possibility they could state or amend to sufficiently allege class claims. Rather, individualized questions predominated on any entitlement to restitution or reimbursement "of all surgical and

12

rehabilitation fees and costs associated with each of the Plaintiffs' treatments." The court noted: "To prove their case, each Plaintiff will have to establish that Dr. Losse was addiction-impaired at the time of their particular treatment or surgery . . . and that they did not receive the value of the services they paid for each of these treatments (i.e., that Dr. Losse's addiction impairment caused them harm)." Further, the court ruled:

> "Proof of each Plaintiff's individual medical condition both before and after treatment will also be necessary to prove that Plaintiff did not receive the 'benefit of the bargain.' Individualized questions predominate in these proof requirements. As stated in *Brown,* the class claims pled present 'a veritable quagmire of tough, factual questions which can only be resolved by individual proof.' (*Brown[, supra],* 151 Cal.App.3d at [p.] 989.)"

On Appellants' UCL claims, the court distinguished the classic consumer fraud authorities relied on by Appellants, and stated:

> "The court is not persuaded by Plaintiffs' reliance on *Vasquez v. Superior Court* (1971) 4 Cal.3d 800. The court finds this case more analogous [to] *Brown* than to *Vasquez.* As explained in *Brown* (in distinguishing *Vasquez*): What may be appropriate to a determination of common issues in a relatively simple consumer fraud action, however, is entirely inappropriate when the alleged fraud relates to the decision to obtain heart surgery. Rather than dealing with straightforward issues such as the price of meat and life expectancy of freezers, the court must grapple with complex issues relating to a patient's medical condition prior to surgery, the need for medical care and the extent of such care required by his condition, the variable nature of the dialogue between physician and patient, the surgical process itself, and postsurgical complications and care. [*Brown, supra,* 151 Cal.App.3d at 990.] Likewise, even though Plaintiffs' claims do not sound in medical malpractice, the medical issues which must be resolved in this case distinguish this case from the straightforward issues in *Vasquez.*"

Accordingly, the action was dismissed as to all its class allegations, and the notice of appeal was filed.

13

DISCUSSION

After setting forth the applicable legal principles for review, we will analyze the class claims for relief based on alleged breach of fiduciary duty or fraud (pt. III), then turn to the UCL claims (pt. IV). We are required to determine the analytical suitability of each theory for class treatment. (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327-328 (*Sav-on Drug Stores*).)

I

*DEMURRERS IN CLASS ACTION CONTEXT*

The trial court treated the motion to strike as a demurrer for analyzing the sufficiency of the class allegations. Sustaining a demurrer to a class action is proper "[w]here a complaint, on its face, fails to allege facts sufficient to establish a community of interest as to the elements of the class claims." (*Kennedy, supra*, 43 Cal.App.4th 799, 808, fn. 4.) Code of Civil Procedure section 436, subdivision (b) allows the court, in its discretion and on proper terms, to "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state. . . ." As noted in *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 385, a motion to strike can be granted if a substantive defect is clear from the face of a complaint (e.g., "a purported claim of right which is legally invalid"), or if a portion of a cause of action seeks an improper remedy.

In determining class certification questions, the courts do not decide the merits of the case, but instead focus on whether common or individual questions are likely to arise in the action. (*Sav-on Drug Stores, supra*, 34 Cal.4th at pp. 327-328.) We examine

14

whether the complaint, on its face, alleges theories that could properly be handled in a class format by setting forth sufficient facts to establish a community of interest as to all elements of the class claims. (*Kennedy, supra*, 43 Cal.App.4th at p. 808.)

Demurrers are routinely used for deciding the issue of class certification, where it is clear that there is "no reasonable possibility" that the plaintiffs could establish a community of interest among the potential class members, and it can be determined that individual issues predominate over common questions of law and fact. (*Kennedy, supra*, 43 Cal.App.4th 799, 808, fn. 4; *Silva v. Block* (1996) 49 Cal.App.4th 345, 349.) There is no need to require a full evidentiary hearing at a class certification motion, where issues of law exist that allow pleadings analysis to be dispositive. (*Brown, supra*, 151 Cal.App.3d 982, 989; *Newell v. State Farm Gen. Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101-1102 (*Newell*).)

Well-established rules of review for testing the legal sufficiency of the operative pleadings apply: "[W]e review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] '*We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.*' [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] . . . The plaintiff has the burden of proving the possibility of cure by amendment." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78 (*Grinzi*), italics added; *Kennedy, supra*, 43 Cal.App.4th at p. 808.)

15

II

*ESTABLISHING ELEMENTS OF CLASS CLAIMS*

A.  Legal Principles

The criteria for class certification are well established.  " 'Section 382 of the Code of Civil Procedure authorizes class suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members.'  [Citation.]"  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103-1104.)

The primary focus of the trial court's ruling and of this appeal is whether the community of interest requirement has been successfully alleged.  As outlined in *Lockheed Martin:*  " 'The community of interest requirement [for class certification] embodies three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'  [Citation.]  Plaintiffs acknowledge it is their burden to establish the requisite community of interest and that 'the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members.'  [Citation.]"  (*Lockheed Martin, supra*, 29 Cal.4th at p. 1104.)

A class action must be the superior means of resolving the litigation, for both the parties and the court.  (*Newell, supra,* 118 Cal.App.4th 1094, 1101.)  Group action has

16

the potential to create injustice, and therefore trial courts must " ' "carefully weigh respective benefits and burdens and [may] allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Ibid*.) " 'The ultimate question in every case of this type is whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*In re Cipro Cases I & II* (2004) 121 Cal.App.4th 402, 410.) "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." (*Sav-On Drug Stores, supra,* 34 Cal.4th at p. 334.)

## B. Class Certification Motions

The parties seek to attach different labels to the operative pleadings, and claim these characterizations should be dispositive of how the class issues should be litigated. Appellants argue this is a standard consumer fraud class action, similar to the fraudulent business practices giving rise to *Vasquez, supra,* 4 Cal.3d 800, while Respondents characterize it as a mass tort action, similar to a personal injury case such as *Kennedy, supra*, 43 Cal.App.4th 799.[5] (See *Gutierrez v. California Commerce Club Inc*. (2010) 187 Cal.App.4th 969, 979 [demurrer rulings to resolve mass tort actions are appropriate, where a need for predominantly individualized inquiries can be identified as matters of

---

5    *Vasquez, supra,* 4 Cal.3d 800, 809, noted in the consumer fraud class action context that "the fact that each member of the class must prove his separate claim to a portion of any recovery . . . is only one factor to be considered in determining whether a class action is proper."  The key factors are whether the class claims do not present numerous and substantial questions on any individual right to recover.

17

law; but compare wage and hour/compensation class actions, or classic consumer fraud cases, in which an evidentiary showing of commonality may be required for class certification].)

Here, both tort and statutory claims are alleged, and labels alone are not dispositive for analyzing class claims. Appellants have not persuasively shown there is any significant rule or policy being followed among the different California appellate districts on which types of class claims may properly be dismissed on demurrer, as opposed to imposing a requirement for an evidentiary record to be considered at a class certification motion proceeding. The case before us does not resemble a wage and hour case that would ordinarily be suitable for class treatment. We think it is a "stretch" to make it out to be a classic class action consumer fraud case; the delivery of professional medical services is a more individualized endeavor than the mass delivery of a given product or commercial service.

True, " '[r]eviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this [community of interest] question.' " (*Sav-on Drug Stores, supra*, 34 Cal.4th at p. 327.) Appellant's opposing papers claimed that full discovery had not yet been allowed, and included a declaration from Dr. Losse, admitting that from 1992, he took opioids from Respondents' supplies, until the year 2000 when he underwent treatment for addiction. The trial court's ruling declined to consider such extrinsic evidence at the pleadings and demurrer stage. When asked, Appellants' counsel did not suggest potential amendments to cure the defects in the pleading, nor have Appellants shown how any declarations to be obtained

18

might show greater suitability for class treatment. They have not shown any justification for proceeding beyond demurrer, to an evidentiary hearing on class certification.

III

*CLASS CLAIMS FOR FRAUD AND BREACH OF FIDUCIARY DUTY*

A. Elements: Fraud and Breach of Fiduciary Duty

The required elements of a fraud or concealment theory are: " ' "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." [Citations.]' [Citation.] " (*Estate of Young* (2008) 160 Cal.App.4th 62, 79.) These fraud claims could be interpreted as seeking tort damages, or rescission and restitution based upon fraud in the inducement of the medical care agreements.

In the health care context, a patient may allege against a provider a claim of breach of fiduciary duty, based on the ground that the provider-physician allegedly obtained the patient's consent to a medical procedure, but without properly disclosing all information material to the patient's decision in that respect. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 129; *Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1164.) The plaintiff-patient must allege (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. (*Ibid.*; *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.)

Appellants do not allege their surgeries were poorly performed nor created bodily injury, but claim that Dr. Losse, as well as all Respondents, failed to make appropriate

19

disclosures to them about Dr. Losse's personal status (i.e., his drug addiction problems) that may have raised the risk level of their surgical procedures. (See *Truman v. Thomas* (1980) 27 Cal.3d 285, 291; *Cobbs v. Grant* (1972) 8 Cal.3d 229, 244-245 [skilled medical practitioner in good standing must provide disclosures to patients of risks of death or serious harm].) Damages are sought in the form of reimbursement of surgical and rehabilitation fees and costs.

### B. Class Treatment of Tort Claims

In its ruling, the trial court relied on *Brown* to evaluate if there were predominant common questions of law and fact regarding the requested class relief. In *Brown*, a group of plaintiffs sought to establish a community of interest as potential class members, by alleging battery as personal injury from medical treatment received. They also claimed related fraud damages from intentional factual concealments about the quality and level of care provided by a cardiology facility. (*Brown, supra,* 151 Cal.App.3d at p. 989.) As potential class plaintiffs, they alleged they were "induced to receive coronary care" by "certain affirmative misrepresentations or the failure to disclose certain facts" by the medical facility defendants. (*Ibid.*) The reviewing court held that the trial court properly sustained a demurrer without leave to amend as to those class action allegations, on the basis that individual issues predominated over common questions of law and fact. (*Id.* at p. 991.)

In *Brown*, the appellate court acknowledged that some of the preliminary elements of a fraud cause of action could lend themselves to a class action method of proof (e.g., representation, falsity, and intent to induce reliance). However, the remaining "tough

factual questions" could only be resolved through individual proof, such as reasonableness of reliance, causation, and damages. (*Brown, supra,* 151 Cal.App.3d at p. 989.) Specifically, a potential class member's "particular medical condition and method of treatment must be examined in order to determine the proximate cause of any claimed damage and the actual extent of such damage." (*Ibid.*) It was not reasonably possible that those plaintiffs would be able to establish a sufficient community of interest to warrant class action, in light of the "numerous and substantial individual questions of fact" raised in the pleadings, concerning their relevant medical circumstances, and the importance of the individual's decision to obtain heart surgery, which was not a strictly business decision but was constrained by individual factors. (*Ibid.*)

Damages for a successful fraud cause of action would be measured by the difference between the value parted with and the actual value received. (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 675 (*Colgan*); see *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1165.) Proof of a class's damages for fraud would be made more difficult in the case before us, by the exclusion from the class of anyone seeking general damages for personal injury. Appellants are seeking only economic reimbursement for elective surgeries that they do not allege were harmful. Those treatments were not known to be unlawful when performed, and in hindsight, the fact that Dr. Losse placed his own license in jeopardy, through alleged drug abuse, did not create separately cognizable forms of fraud damages to Appellants as a class, that could be uniformly measured by the difference between the professional fees charged,

21

and hypothetically the zero fees that an unlicensed practitioner could receive for performing surgeries.

Likewise in *Brown, supra,* 151 Cal.App.3d at pages 990 to 991, the reviewing court disallowed class treatment of battery issues that involved an alleged nondisclosure of desired medical information. Although the plaintiffs had alleged the health care provider had intentionally concealed material information on its morbidity and mortality statistics, prior to their decision to obtain medical care, and therefore their consent to medical care was not an informed one, such a cause of action for battery based on nondisclosure of risk was deemed inappropriate for class treatment. (*Id*. at pp. 987, 990.)

As support, the court in *Brown, supra,* 151 Cal.App.3d at pages 990 to 991 observed that informed consent concepts presuppose there are communications between doctor and patient, and the plaintiffs were putting into issue their exact communications between the providers and patients, which varied from case to case. (*Ibid*.) Class treatment of the informed consent claims was not appropriate, since individual issues predominated over common questions. (*Id*. at p. 991.) For example, it could not be determined on a classwide basis whether each plaintiff had unique medical concerns that were inadequately addressed. (*Id.* at pp. 990-991.)

Appellants contend that *Brown* is distinguishable on its facts, because these were elective surgeries, not cardiology procedures essential to maintain life. Appellants argue they successfully alleged class entitlement to relief, subject to later proof, simply because they claim Dr. Losse's practice of medicine at the time would have been against the law, due to his drug addiction. They also claim on a classwide basis that they uniformly

22

would not have paid for treatment, if they had known about Dr. Losse's impairment by drugs. However, Appellants cannot properly characterize those allegations as ultimate facts, and they instead appear to be in the nature of legal conclusions on causation and damages. (*Brown, supra,* 151 Cal.App.3d at p. 989.)

Under the standards of section 2280, it would be unprofessional conduct if Dr. Losse were impaired during the time of the particular treatment, to the extent that he could not safely practice medicine despite having allegedly consumed narcotics. This impairment level over two years presumably varied with individual patients. (See *Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1424 [holding that professional discipline of a physician for "unprofessional conduct" (statutorily defined as including the use of alcohol "to the extent, or in such a manner as to be dangerous or injurious" to the physician or others) was in line with constitutional due process principles, even if the conduct did not result in a criminal conviction, citing § 2239, subd. (a)]; 36 Cal.Jur.3d (2013 supp.) Healing Arts, § 254, p. 81.) For purposes of a civil right of action for monetary recovery under a breach of fiduciary duty theory, there must be a nexus shown between Dr. Losse's purported addiction to narcotics and his fitness to practice medicine, at the time of each patient's individualized care and treatment, as well as knowledge of each Respondent about that status.

In determining class certification questions, the courts do not decide the merits of the case, but instead focus on whether common or individual questions are likely to arise in the action. (*Sav-on Drug Stores, supra*, 34 Cal.4th at pp. 327-328.) These fraud and breach of fiduciary duty allegations require fact intensive, individualized inquiries

23

regarding the representations made to various patients, such as allegedly false communications about the risks involved in treatment or nondisclosures of the same, and the effect of the representations on them. Appellants are keeping the results of the surgeries performed and are not complaining about those results, so they will need to make individualized showings of liability and causation of loss that leads to any entitlement to restitution of medical fee amounts. These claims are not properly subject to class treatment, for proof of tort damages or of a right to rescission and restitution based upon fraud in the inducement of the medical care agreements.

IV

*UCL CLASS CLAIMS; REMAINING ISSUES*

A. Elements: Representative v. Class Claims

Pursuant to the trial court's ruling, Appellants may separately pursue a representative action under the UCL to obtain relief that is similar to that which could be pursued in a class action: "There is no inherent incompatibility between the unfair competition law and class actions. 'Both consumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights.' [Citation.]" (*Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1014-1015 (*Feitelberg*); see *Twain Harte Homeowners Assn. v. Patterson* (1987) 193 Cal.App.3d 184, 187-188 (*Twain Harte*).)

In reviewing this demurrer and motion to strike ruling, we inquire whether Appellants can demonstrate under Code of Civil Procedure section 382 that their UCL claims raise class questions " 'of a common or general interest, of many persons, or when

24

the parties are numerous, and it is impracticable to bring them all before the court.' "

(*Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 120 (*Davis-Miller*); *Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843.)

Class actions cannot proceed under the UCL to remedy a fraudulent business practice "when it cannot be established that the defendant engaged in uniform conduct likely to mislead the entire class. [Citations.] Specifically, when the class action is based on alleged misrepresentations, a class certification denial will be upheld when individual evidence will be required to determine whether the representations at issue were actually made to each member of the class." (*Davis-Miller, supra*, 201 Cal.App.4th 106, 121; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325 & fn. 17 [class representative pursuing a UCL fraud theory must be capable of demonstrating traditional standing in terms of alleging actual injury and causation, including actual reliance on acts of unlawful or fraudulent competition].)

Appellants claim they successfully pled the fraudulent, unfair and unlawful prongs of their UCL cause of action, based on the alleged predicate violations of statutes governing discipline for impaired physicians. (E.g., § 2280; Health & Saf. Code, § 11170 et seq.)

### B. UCL Relief Allowable

The appropriate remedies in UCL actions are limited to injunctive relief and restitution. (*Feitelberg, supra*, 134 Cal.App.4th 997, 1007; citing *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 at pp. 1147, 1152 [an action by an

25

individual plaintiff].)  The "remedy of nonrestitutionary disgorgement is not available in statutory unfair competition cases, even those brought as class actions." (*Feitelberg, supra*, at p. 1007.)

*In re Vioxx Class Cases, supra,* 180 Cal.App.4th 116, explains that "in order to obtain class wide restitution under the UCL, plaintiffs need establish not only a misrepresentation that was likely to deceive [citation] but also the existence of a 'measurable amount' of restitution, supported by the evidence [citation]." (*Id.* at p. 136.) To measure restitution due for expenses paid for a bad medication, for example, the cost of a valid comparator medication is necessary to calculate loss.  (*Ibid.*)

Appellants allege that they as a class are entitled to recover all professional fees they paid to Respondents, as restitution for "valueless" services.  Essentially, Appellants claim each medical service agreement was void or voidable, regardless of whether the individual surgeries were beneficial or not.

It is instructive to look at the nature of restitution in the UCL context.  Restitution must be consistent with the purpose of restoring to the plaintiff those amounts that the defendant wrongfully acquired. (*Colgan*, *supra*, 135 Cal.App.4th 663, 694-696 & fn. 22.)  "Where restitution is ordered as a means of redressing a statutory violation, the courts are not concerned with restoring the violator to the status quo ante.  The focus instead is on the victim.  'The status quo ante to be achieved by the restitution order was to again place the *victim* in possession of that money.'  [Citation.]  'The object of [statutory] restitution is to restore the status quo by returning to the *plaintiff* funds in which he or she has an ownership interest.'  [Citation.]  'The purpose of the civil remedy

26

is to allow recovery of the excess paid and to prohibit the seller from receiving and keeping such excess.' [Citation.]" (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 134-135, italics in original [relief can include requiring mobile home park owners to disgorge unauthorized rents and to restore that money to the affected tenants].)

### C. Analysis of Class UCL Allegations

To seek monetary relief in restitution, Appellants as a class allege that Dr. Losse's professional conduct fell below the expected level of skill, as provided in section 2280. It is unprofessional conduct for a physician to practice medicine while under the influence of any narcotic drug or alcohol "to such an extent as to impair his or her ability to conduct" the safe practice of medicine. As a matter of law, for disciplinary purposes, the courts accept there is a nexus between the excessive use of intoxicating substances and a physician's general fitness to practice medicine. (See *Watson v. Superior Court, supra*, 176 Cal.App.4th 1407, 1424.)

However, these operative pleadings do not establish that Dr. Losse's use of drugs had an actual and uniform impact upon the class members by undermining his ability to practice medicine, by making it dangerous or injurious to Appellants or others. Although section 2280 makes it "unprofessional conduct" to practice medicine while impaired, it does not per se prevent recovery of the reasonable value of services. (Compare *Birbrower, supra,* 17 Cal.4th 119 [attorneys practicing without license in California cannot recover fees for their "illegal local service," but quantum meruit claim for severable portion of legal services not foreclosed].)

27

Since Appellants exclude in their definition of their proposed class any persons who suffered bodily injury from the surgeries, this factor suggests that Appellants cannot successfully plead entitlement to classwide nonrestitutionary disgorgement of allegedly unfairly obtained fees, merely because Dr. Losse should have been subject to professional discipline at the time the fees were obtained. (*Feitelberg, supra*, 134 Cal.App.4th at pp. 1016-1017.) If the fees for services were properly calculated and collected at the time, the UCL should not provide a remedy for alleged misleading business practices. (*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 339-340.) Whether the treatments were unlawfully rendered and resulted in harm would require individualized showings by each class member, before any relief could be awarded. For any "measurable amount" of restitution that is supported by the evidence to be ordered, Appellants would have to show on a classwide basis how they were harmed and to what extent, but each appellant has a unique set of medical and financial circumstances both before and after the elective surgeries. (*In re Vioxx Class Cases, supra*, 180 Cal.App.4th 116, 136.)

The result sought by the class would erroneously place the focus on punishing or restoring the violators (Dr. Losse and Respondents) to the status quo ante, but instead, the proper focus should be on making the victim or class whole. (*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, *supra*, 111 Cal.App.4th 102, 134-135.) Although the circumstances of these surgeries and treatments were certainly regrettable, Appellants have not successfully pled that it can be determined on a class basis that objectively, each class member did not get the level of service that was paid for at the time, despite their subjective knowledge of some level of increased risk, as obtained in hindsight.

Appellants further claim each Respondent (the colleagues or the corporations and surgery center) participated in the alleged wrongful acts, and should be subject to direct or vicarious liability to the class for unfair business practices. However, the underlying rationale for such recovery fails, since Dr. Losse remained licensed during the proposed class period, and there is no class claim for bodily injury. It is a legal conclusion, not a material fact, to plead that the medical services were valueless, and to allege that Respondents facilitated obtaining consent for surgeries and treatment by an "incompetent" supervising surgeon. These UCL class claims fail to state a cognizable cause of action.

## D. Conclusion; Remaining Issues

Although the threshold ascertainable class requirement of Code of Civil Procedure section 382 was generally disputed, it was not expressly ruled on by the trial court. A properly identified class must be "ascertainable," meaning that the class must comprise a "group that was [actually] harmed by the defendants." (See *Akkerman v. Mecta Corp., Inc*. (2007) 152 Cal.App.4th 1094, 1100; Code Civ. Proc., § 382.) A class definition that includes unharmed persons is overbroad and nonascertainable, because it would grant those persons a windfall. (See *Akkerman, supra,* at p. 1101 [dismissing class claims where there would be a "windfall award of restitution" to all who received shock treatments "even if the procedures were successful and beneficial"].) Appellants have not successfully defined this class, by seeking to avoid any recognition that they sustained no alleged particular bodily injury from the surgeries for which they paid.

29

In any event, under the ruling of the trial court, Appellants may continue to pursue their individual and representative causes of action that allege fraud, lack of informed consent and relief under the UCL. (See *Twain Harte, supra,* 193 Cal.App.3d 184, 187-188.) This record does not allow us to opine upon the eventual success on the merits of any of the causes of action adequately pled. (*Sav-On Drug Stores, supra*, 34 Cal.4th at pp. 327-328.) We address only the class action and agree with the trial court that Appellants have demonstrated no reasonable possibility of pleading the required prima facie community of interest among class members. (*Brown, supra*, 151 Cal.App.3d at p. 988.)

## DISPOSITION

The order of dismissal of the class allegations is affirmed. Costs are awarded to Respondents.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.

O'ROURKE, J.

30